E. D. SYSTEMS CORPORATION, Plaintiff-Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant-Appellee.

No. 81–1144.

United States Court of Appeals, Fifth Circuit.

April 30, 1982.

Rehearing Denied June 17, 1982.*

* Judge Williams is recused on the motion for rehearing.

**454**

M. David Bryant, Jr., Dallas, Tex., for plaintiff-appellant.

James H. Hand, Martin C. Ruegsegger, Dallas, Tex., Liam S. Coonan, St. Louis, Mo., for defendant-appellee.

Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The appellant, E.D. Systems Corporation (EDS) sued Southwestern Bell Telephone Company (Bell) in state court in Texas to recover $200,000 representing the proceeds of two certificates of deposit, plus interest. EDS alleged that it had ownership rights in the certificates of deposit and that Bell's possession of the proceeds of the certificates amounted to conversion. Bell removed the case to federal court because of diversity of citizenship. Upon cross motions for summary judgment, the district court granted summary judgment for Bell and EDS brought this appeal. We reverse and remand for a full trial.

## I. FACTS

The facts of this case, as they appear from the limited record before us, are complex. Both Bell and EDS claim the funds at issue because of dealings with a third party, Systems Financing, Inc. (SFI), which is not involved in this suit. In 1976, EDS sold computer equipment to SFI. SFI paid for the equipment with a note for $250,000, but then defaulted. EDS sued SFI in state court and won a judgment for $250,000 on June 2, 1978.

SFI's assets were under the control of a receiver in Texas state court. The receiver had been appointed in a divorce action between the president of SFI, Joel McQuade, and his wife, Elana. The receiver had the responsibility of settling claims against the community estate. On July 5, 1978, EDS intervened in the receivership to assert its claim against SFI. Among the funds that the receiver had listed as part of the community estate were two $100,000 certificates of deposit issued by the Mercantile National Bank in the name of SFI. EDS began to negotiate with the receiver and McQuade about settling EDS's claim in part with the certificates of deposit.

The certificates of deposit had a checkered history, not all of which had come to light when EDS began negotiating with McQuade and the receiver. Between 1974 and 1977, McQuade had been involved in a kickback scheme with a vice president of

Bell, Ray Allen Acker. McQuade had induced Bell to lease computer equipment from SFI by paying kickback money to Acker. At least part of the money paid to Acker was represented by the Mercantile certificates of deposit. To conceal the kickback scheme, the Mercantile certificates of deposit were issued in SFI's name but were held in escrow under an agreement giving Acker ownership of them.

Acker's activities had drawn the attention of the United States Attorney for the Northern District of Texas as possible violations of the Racketeer Influenced and Corrupt Organizations Act, (RICO), 18 U.S.C. § 1962. By March of 1978, the United States Attorney became interested in subjecting the Mercantile certificates of deposit to forfeiture under § 1963 of RICO.[1] The court appointed receiver of McQuade's community estate got wind of the United States Attorney's plans and obtained in his state court a temporary order restraining the United States from exercising dominion over the certificates. Before the temporary restraining order was served, however, the United States Attorney moved in federal district court to have the Mercantile certificates of deposit negotiated and the proceeds paid into the registry of the court. Judge Hughes granted the motion on March 8 in an order styled *In Re: Grand Jury*, Miscellaneous Docket No. 1012 (N.D.Tex. March 8, 1978).

One week later, on March 15, the United States removed the entire divorce action to federal court. The receiver moved to remand the divorce action to state court. On April 17, Judge Hughes granted the motion to remand the divorce action to state court "with the exception of any proceedings dealing with the Two Hundred Thousand Dollars ($200,000.00) which has been ordered paid into the registry of this court under the Miscellaneous Docket No. 1012. . . ." The receiver then moved in Miscellaneous Docket 1012 for an order releasing the proceeds of the Mercantile certificates of deposit to it. On June 21, 1978, Judge Hughes denied this motion.

In July, 1978, EDS undertook to determine whether SFI and McQuade could give good title to the certificates even though the proceeds were in the federal court registry. EDS asked the United States Attorneys' Office about the United States' theory for holding the proceeds of the certificates, but the United States Attorneys' Office would not discuss the matter. EDS then concluded on the basis of its own legal

---

1. § 1963 provides:

(a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind afforded a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

(b) In any action brought by the United States under this section, the district courts of the United States shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including, but not limited to, the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper.

(c) Upon conviction of a person under this section, the court shall authorize the Attorney General to seize all property or other interest declared forfeited under this section upon such terms and conditions as the court shall deem proper. If a property right or other interest is not exercisable or transferable for value by the United States, it shall expire, and shall not revert to the convicted person. All provisions of law relating to the disposition of property, or the proceeds from the sale thereof, or the remission or mitigation of forfeitures for violation of the customs laws, and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof. Such duties as are imposed upon the collector of customs or any other person with respect to the disposition of property under the customs laws shall be performed under this chapter by the Attorney General. The United States shall dispose of all such property as soon as commercially feasible, making due provision for the rights of innocent persons.

research that the United States had no claim to the proceeds of the certificates of deposit. EDS also relied on McQuade's assurances that SFI could deliver clear title to the certificates.

EDS had considered satisfying its judgment against SFI with other SFI assets. Among these assets were SFI's interests in computer equipment leased to Bell. Because of the difficulty in valuing SFI's interest in the equipment leased by Bell, EDS wrote to Bell on August 4, 1978. EDS asked whether Bell was aware of adverse claims against the computer equipment. On August 11, Bell responded by referring the letter to its legal department and declaring that the matter was "complex."

EDS then moved rapidly ahead with its settlement negotiations. EDS reached a comprehensive agreement with the receiver and McQuade to release all of EDS's claims against McQuade and SFI in exchange for certain SFI assets including the proceeds of the certificates of deposit. The state court held a hearing on the settlement on September 11 and approved it on September 18. Three days later, SFI and McQuade assigned their interests in the certificates or their proceeds to EDS.

Bell then intervened in the receivership proceedings. On October 4, Bell moved to have a constructive trust in its favor impressed on the proceeds of certificates of deposit. Shortly thereafter, Bell informed EDS that Bell had various claims against SFI. On December 4, 1978, the state district court ruled against a constructive trust. The court also terminated the receivership. Bell made no effort to appeal the adverse ruling on its motion.

On March 1, 1979, Bell filed a motion with Judge Hughes to have the funds in Miscellaneous Docket No. 1012 released to it. Bell alleged that its vice president, Acker, had been indicted on November 14, 1978 for violations of RICO, 18 U.S.C. § 1962, and had pleaded guilty on December 7, 1978. Among the acts that Acker had acknowledged was receiving kickback money from McQuade. Bell claimed to be a victim of Acker's breach of his fiduciary duty and

further claimed that any kickback money received by Acker was the property of Bell under the doctrine of constructive trust. The premise underlying Bell's claim to the kickback funds was that Bell had lost money because of the inflated costs of the computer leases that Acker had awarded in return for a bribe. The bribe money, therefore, should be paid to Bell to offset its losses. The United States supported Bell's motion, and on June 20, 1979, Judge Hughes ordered the proceeds of the certificates of deposit plus interest released to Bell. EDS was not a party to these proceedings.

EDS then brought the instant action against Bell in Texas state court. EDS alleged that it held title to the proceeds of the certificates of deposit and that Bell's possession of the proceeds was a conversion of EDS's property. Bell removed the suit to federal district court and successfully moved for summary judgment. EDS filed a timely notice of appeal.

EDS argues that the judgment below should be reversed on four separate grounds. First, EDS maintains that Bell's claim to the funds was adjudicated in the receivership proceedings in state court and, therefore, Bell is barred by res judicata. Second, EDS claims that it was a bona fide purchaser of the certificates of deposit, and, therefore, Bell's claim to the funds may not be asserted against it. Third, EDS contends that Bell's constructive-trust theory relies on rights obtained under an illegal agreement—the kickback scheme—and is barred by policy considerations under Texas law. Fourth and finally, EDS urges that there are disputed issues of material fact precluding summary judgment. EDS particularly argues that there are disputed factual issues in its claim that Bell is barred by laches or estoppel from asserting a constructive trust in the funds. We address these issues in order.

## II. Res Judicata

EDS argues that Bell is precluded from asserting a constructive trust over the certificates of deposit or their proceeds be-

cause the rights have been finally adjudicated in favor of EDS. EDS contends that Bell's defeat in the state court receivership proceedings forecloses Bell from renewing its claim in federal court. Bell replies that the state court adjudication does not bind it under any one of three theories: (1) the state court's rejection of Bell's claim was not a final judgment, (2) the state court's approval of the receiver's actions did not explicitly reject Bell's constructive trust claim, or (3) the state court lacked jurisdiction to determine ownership of the funds. Because we find the jurisdictional issue dispositive, we do not address Bell's other arguments against the application of res judicata.

■ A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation. 28 U.S.C. § 1738; *Rollins v. Dwyer*, 666 F.2d 141, 144 (5th Cir. 1982). We look, therefore, to Texas law to decide whether the prior Texas decision is res judicata.

■ In Texas, "the doctrine of res judicata precludes subsequent relitigation by the same parties of a question of law or issue of fact which have [sic] been determined by a court of competent jurisdiction." *Gottschald v. Reaves*, 470 S.W.2d 149, 151 (Tex.Civ.App.1971). The principles of res judicata have been applied to shield the actions of a receiver, approved by a court, against collateral attack. *Security Trust Co. v. Lipscomb County*, 142 Tex. 572, 180 S.W.2d 151 (1944). When a collateral attack is made on the jurisdiction of a court to act, the existence of the court's jurisdiction must be determined from the record in the case. "Unless the record negatives the existence of facts that are essential to the court's jurisdiction, the law conclusively presumes upon collateral attack that those facts were established by the evidence" *Security Trust Co. v. Lipscomb County*, 180 S.W.2d at 156.

■ Bell argues that the receiver had no jurisdiction to determine claims of ownership of the certificate of deposit proceeds. Bell maintains that when the United States removed the divorce action to federal court, the state court receiver lost power to adjudicate rights in the certificates of deposit. Moreover, Bell contends, Judge Hughes' remand of the divorce action did not restore jurisdiction to the state court because Judge Hughes excepted proceedings relating to the $200,000 plus interest in the registry of the federal court. Bell concludes that the removal and limited remand of the divorce action stripped the receiver of power to render a binding judgment against it.

When Judge Hughes remanded the divorce action, she ordered that "the clerk of this Court make a certified copy of the MOTION TO REMAND and this ORDER and that she forward the same to the clerk of the 303rd Judicial District of Dallas County, Texas." The remand order, with its explicit exclusion of proceedings relating to the $200,000 in the federal court registry, thereby became a part of the record in the state court case and raises issues of the validity of the state court's decision.

■ In *National Steam-Ship Co. v. Tugman*, 106 U.S. 118, 1 S.Ct. 58, 27 L.Ed. 87 (1882), the Supreme Court held that the removal of a case from state court to federal court ends the power of the state court to act.

> Upon the filing, therefore, of the petition [for removal] and bond ... the jurisdiction of the state court absolutely ceased, and that of the circuit court immediately attached. The duty of the state court was to proceed no further in the case. Every order thereafter made in that court was *coram non judice*, unless its jurisdiction was actually restored.

106 U.S. at 122, 1 S.Ct. at 60.[2] *See Johnson v. Estelle*, 625 F.2d 75, 77 (5th Cir. 1980)

**2.** When *National Steam-Ship* was decided, a case had to be properly removable in order for a removal petition to divest the state court of jurisdiction. The removal statute, 28 U.S.C. § 1446 was amended in 1949, however. Later cases hold that even if a case is not properly

(per curiam);[3] *South Carolina v. Moore*, 447 F.2d 1067, 1073 (4th Cir. 1971); *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962). The jurisdiction of the state court is not restored unless and until the federal court remands the case. *Lowe v. Jacobs*, 243 F.2d 432, 433 (5th Cir. 1957), *cert. denied*, 355 U.S. 842, 78 S.Ct. 65, 2 L.Ed.2d 52 (1957). A state court judgment in a case that has been removed may not foreclose further federal proceedings in the removed case and the federal court may enjoin a party from enforcing the state court judgment. *Adair Pipeline Co. v. Pipeliners Local Union No. 798*, 325 F.2d 206 (5th Cir. 1963); *Roach v. First National Bank of Memphis*, 84 F.2d 969 (5th Cir. 1936).

■ We now examine the jurisdictional effects of Judge Hughes' limited remand of the divorce action to state court. The limited remand withheld the $200,000 and proceedings relating to it from the jurisdiction of the state court. Judge Hughes retained the funds pending a determination whether the funds should be forfeited to the United States upon conviction of a person who acquired an interest in them in violation of RICO, 18 U.S.C. § 1962.[4] *See United States v. L'Hoste*, 609 F.2d 796, 809 (5th Cir. 1980), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). The receiver, therefore, no longer had jurisdiction to *adjudicate* the merits of Bell's claim to impress a constructive trust on the funds.[5] EDS's argument that Bell is now barred by res judicata from asserting its constructive trust claim must be rejected.[6]

---

removable, the filing of a removal petition in federal court ends the state court's jurisdiction until the case is remanded. *See Lowe v. Jacobs*, 243 F.2d 432, 433 (5th Cir. 1957), *cert. denied*, 355 U.S. 842, 78 S.Ct. 65, 2 L.Ed.2d 52 (1957).

**3.** *Johnson v. Estelle* was a habeas corpus case. A criminal defendant in state court had filed two removal petitions in federal court. The second petition substantially duplicated the first. One federal district judge ruled against the second removal petition and remanded the case to state court. The defendant was then tried and convicted. Later, a second federal district judge, apparently unaware that two removal petitions had been filed, dismissed the first removal petition for want of prosecution.

The defendant petitioned for a writ of habeas corpus, alleging that the state court that convicted him lacked jurisdiction because a removal petition was pending in federal court. We acknowledged the theoretical validity of this argument, 625 F.2d at 77, but declined to grant the writ because of the unique circumstances of the case.

**4.** We need to express no opinion on whether Judge Hughes' disposition of the removal petition was proper.

**5.** That is not to say, however, that the receiver lost all power to act with respect to the certificate of deposit proceeds. The exclusive jurisdiction of the federal court was not impaired or affected by the receiver's and the state court's approval of the assignment of SFI's interest in the certificates of deposit to EDS. The approval of this assignment, therefore, was within the power of the state court. *See United States v. Klein*, 303 U.S. 276, 281, 58 S.Ct. 536, 538, 82 L.Ed. 840 (1938). The *Klein* Court stated:

"While a federal court which has taken possession of property . . . is said to acquire exclusive jurisdiction, the jurisdiction is exclusive only insofar as restriction of the power of other courts is necessary for the federal court's appropriate control and disposition of property."

*Klein* has been read by the Third Circuit to apply only when the United States is a mere stakeholder and disclaims any interest in the property in its custody. *See Stapleton v. $2,438,110*, 454 F.2d 1210, 1214 (3d Cir. 1972) *cert. denied*, 409 U.S. 894, 93 S.Ct. 111, 34 L.Ed.2d 1151 (1972). We decline to read *Klein* so narrowly. The receiver's approval of the settlement could not affect the federal court's jurisdiction to forfeit the proceeds of the certificates of deposit if the federal court had concluded that forfeiture was required. Thus, our holding that the receiver lacked jurisdiction to adjudicate Bell's claim does not cast doubt on the receiver's approval of the assignment of SFI's interest in the certificate of deposit proceeds, whatever it was, to EDS.

**6.** EDS argues that Bell is estopped from challenging the receiver's jurisdiction because Bell intervened in the receivership proceedings and invoked the receiver's jurisdiction. But this is not the law. In *National Steam-Ship Co. v. Tugman, supra*, the Supreme Court held that a party who removes an action has no obligation to appear in state court and litigate the suit on the merits if the state court exercises jurisdiction in defiance of the removal. The Court also held, however, that if the defendant chooses to litigate in state court, it does not waive its jurisdictional objection. *Accord: Kern v. Huidekoper*, 103 U.S. 485, 26 L.Ed. 354 (1881). The same logic applies to a party who intervenes in a proceeding only to protect its interest. Bell did not waive its jurisdictional objection.

### III. Bona Fide Purchaser

█ EDS argues that it is a bona fide purchaser for value of the certificates of deposit. We apply Texas law to the substantive issues in this diversity case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If EDS can establish the status of a bona fide purchaser, Bell may not assert a constructive trust against it. *See Texas Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947) *cert. denied*, 333 U.S. 880, 68 S.Ct. 911, 92 L.Ed. 1155 (1948). The district court found that EDS was not a bona fide purchaser without elaborating the reasons for its conclusion. We reverse because there are factual issues involved in the bona fide purchaser issue that are not appropriately resolved on a summary judgment motion.[7] *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir. 1982). See *Jones v. Western Geophysical Co.*, 669 F.2d 280 at 282–283 (5th Cir. 1982).

"A bona fide purchaser ... is one who buys property in good faith for valuable consideration and without knowledge (actual or imputed) of outstanding claims in a third party or parties." *Carter v. Converse*, 550 S.W.2d 322, 329 (Tex.Civ.App.1977, *writ ref'd n. r. e.*). Bell contends that EDS cannot be a bona fide purchaser because EDS had implied notice of Bell's claim to the proceeds of the certificates of deposit. Bell also argues that EDS failed to give value for the certificates of deposit. We turn first to the issue of notice.

Texas courts have comprehensively defined notice. In *Hexter v. Pratt*, 10 S.W.2d 692, 693 (Tex.Comm'n.App.1928) (cited with approval in *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 289 (1951)), the court stated:

In common parlance "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained.

The Supreme Court of Texas has held that:
[K]nowledge will be imputed and may be implied from circumstances where the circumstances known to one concerning a matter in which he is interested are sufficient to require him, as an honest and prudent person, to investigate concerning the rights of others in the same matter, and diligent investigation will lead to discovery of any right conflicting with his own.

*Flack v. First National Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628, 632 (1950). Implied notice requires sifting through the unique facts and circumstances of a case.

Generally speaking, what will amount to implied notice sufficient to affect the party who receives it depends on the particular facts of each case. There can be no general rule which embraces all circumstances that are sufficient to put a party on notice of the existence of a fact, but it is universally recognized by our courts that the fact which is claimed to put a person on notice must be of a nature that would normally excite investigation; mere rumors, vague statements, and circumstances that are dubious or equivocal and do no more than arouse suspicion or create speculation, are not sufficient to constitute actual notice.

*Exxon Corp. v. Raetzer*, 533 S.W.2d 842, 846 (Tex.Civ.App.1976, *writ ref'd n. r. e.*).

█ The issue of notice is factual, and should not be resolved by the court as a question of law unless "there is no room for ordinary minds to differ as to the proper

---

7. Summary judgment, as we have repeatedly held, should be granted only when "there is no genuine issue as to any material fact and ... and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir. 1982). If factual issues are in contest, summary judgment may not be entered. Even when, as in this case, the underlying facts are not contested, there may remain fact questions on the inferences to be drawn from the facts. "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Id.*

conclusions to be drawn from the evidence." *Crystal City Independent School District v. Crawford*, 612 S.W.2d 73, 75 (Tex.Civ.App. 1980—*writ ref'd n. r. e.*). We cannot say that the facts in this case point ineluctably to a single conclusion on the issue of implied notice. EDS could have had implied notice of Bell's claim to the certificate·proceeds. EDS could also have implied notice of the United States' claim. Implied notice of either claim would destroy EDS' status as a bona fide purchaser. EDS contends that it wrote to Bell and that Bell replied in such a fashion as not to give EDS any indication that Bell had a claim. We think that Bell's response to EDS—that the legal implications of Bell's dealings with SFI were "complex"—raises a fact question whether EDS had implied notice. We also think that EDS' knowledge of the United States' interest in the proceeds raises factual issues. Although the proceeds were in the federal court registry, EDS contends that when it became an assignee of SFI's interest in the proceeds, it believed that the funds were retained by the court only as evidence in the pending criminal case against Acker. Whether EDS had implied notice of the United States' claim in this state of affairs raises a factual issue. We therefore reverse and remand for a trial of these issues.

■ Bell argues that EDS failed to give value for the rights it acquired in the certificates of deposit. We reject this argument. EDS acquired an assignment of SFI's rights in the certificates of deposit in a comprehensive settlement agreement. EDS gave as consideration for the certificates of deposit a promise to release both McQuade and SFI from all claims that EDS had at that time against those two parties.[8] This promise clearly constitutes value.

IV. Illegal Agreement

■ EDS argued below that Bell's theory of ownership of the certificates of deposit—

it through a constructive trust is invalid because the theory relies on proving and enforcing an illegal agreement. Bell argues that it is entitled to the certificate proceeds because its fiduciary accepted them as a bribe in return for awarding computer leases at an inflated cost to Bell. Rather than relying on an illegal agreement, Bell argues, Bell claims the funds as partial compensation for the amounts it lost because of Acker's fraud. The district court rejected EDS' contention that Bell was relying on an illegal agreement. We believe that the proper resolution of this issue requires a more detailed factual inquiry.

■ Texas law is well settled that a party to a contract cannot compel performance if the contract is illegal. *International Aircraft Sales, Inc. v. Betancourt*, 582 S.W.2d 632 (Tex.Civ.App.1979, *writ ref'd n. r. e.*); *Gulf Collateral, Inc. v. Cauble*, 462 S.W.2d 619 (Tex.Civ.App.1971). EDS argues that Bell's employee, Acker, performed an illegal act—the awarding of computer leases in breach of his fiduciary duty—and asked for money in return. The money was to be paid through certificates of deposit issued in SFI's name but held subject to an escrow agreement giving Acker ownership rights. EDS argues that Acker never owned the certificates, only a contractual right to them. If Acker's title cannot be proved except through the illegal agreement, EDS contends, Bell cannot assert a constructive trust without also proving and enforcing the illegal agreement.

Bell replies that title vested in Acker when the certificates of deposit were delivered into escrow. The escrow agreement represented not a promise to pay but evidence of a completed transaction. Therefore, Bell concludes, the constructive trust it seeks to impose on the certificates does not require enforcing an illegal agreement.

The rights here asserted derive from odd sources: Bell traces its title to a fiduciary

---

**8.** Contrary to Bell's assertion, the assignment of the certificates of deposit was not an "assignment for the benefit of creditors," which is incapable of defeating a constructive trust. An assignment for the benefit of creditors is a remedy for creditors against a debtor. It involves the assignment of the debtor's assets to an assignee who functions as a trustee for the creditors. *See* 17 Tex.Jur.3d §§ 74–122 (1982). This creditor's remedy bears no resemblance to the contractual assignment of the certificates of deposit or their proceeds to EDS.

who accepted a bribe, EDS traces its title to an assignor who paid one. On the one hand EDS cannot recover the money if the money was actually paid to Acker—the person whose action the bribe sought to influence. *Bruder v. State*, 601 S.W.2d 102 (Tex.Civ. App.1980, writ ref'd n. r. e., *cert. denied*, 452 U.S. 940, 101 S.Ct. 3084, 69 L.Ed.2d 954 (1981). Bell correctly argues that if the bribes intended to be paid to Acker were actually paid, the money is property acquired in breach of a fiduciary duty. The money would then be subject to a constructive trust to compensate Bell for its losses due to the inflated computer leases. *See Palmer v. Fuqua*, 641 F.2d 1146, 1155 (5th Cir. 1981). On the other hand, if Acker was only *owed* money for having performed an illegal act or participated in an illegal transaction, Acker could not compel payment on the debt. *International Aircraft Sales, Inc. v. Betancourt, supra; Gulf Collateral, Inc. v. Cauble, supra.* In such a situation, Bell's constructive trust would never attach because Acker never required the money, only a contractual right to the money.

EDS and Bell disagree on the pivotal fact question in deciding whether the enforcement of an illegal agreement is essential to Bell's case. That fact question is whether Bell's fiduciary (Acker) acquired the certificates of deposit, or only a contractual right to them. We remand for a trial to establish the critical facts concerning ownership of the certificates of deposit as between SFI and Acker.

### V. Laches and Estoppel

EDS argues that there are material facts in dispute with respect to its theory that Bell is barred by laches or estoppel from asserting a constructive trust. The district court apparently rejected EDS's arguments on laches and estoppel although it made no findings with respect to them. We hold that the district court must, on remand, give EDS an opportunity to prove that Bell is estopped from asserting a constructive trust.

 The gist of EDS's laches and estoppel arguments is that EDS inquired of Bell on August 4, 1979, whether Bell had claims in SFI property. Bell, according to EDS, had knowledge of its specific claims against the certificates of deposit, yet kept silent. This silence, EDS alleges, was a misrepresentation upon which EDS relied when it entered into the settlement with SFI. EDS asserts that if Bell is now allowed to claim the certificates of deposit through a constructive trust, EDS will be prejudiced. Therefore, EDS concludes, Bell is estopped from raising a constructive trust defense.

Under Texas law,

The essential elements of estoppel are: (1) a false representation or concealment of a material fact; (2) made with knowledge, actual or constructive, of the fact, (3) the party to whom it was made must be without knowledge or the means of knowing the real facts; (4) the false representation or concealment must have been made with the intention that it would be acted on; and (5) the party to whom it was made must have relied on and acted on it to his prejudice.

*Mandril v. Kasishke*, 620 S.W.2d 238, 243 (Tex.Civ.App.1981, *writ ref'd n. r. e.*). Although Bell had no duty to inform EDS of claims of which Bell was not aware, *Crews v. General Crude Oil Co.*, 287 S.W.2d 243, 250 (Tex.Civ.App.1955), the key issue here is whether Bell was aware of its rights and deliberately kept quiet. This matter raises fact questions, *see Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929 (1952), and cannot be resolved on a summary judgment.

Bell argues that laches and estoppel can only be used as affirmative defenses to a claim, and cannot be used to restrict Bell's constructive-trust defense. In other words, Bell argues that laches and estoppel can be used only as "shields," not as "swords." Bell is correct with respect to laches. *Allen v. Boatwright*, 618 S.W.2d 856, 863 (Tex. Civ.App.1981, *writ ref'd n. r. e.*). Estoppel, however, may be used to defeat a defense such as the one raised by Bell. *Gulbenkian v. Penn, supra.* In *Gulbenkian*, Gulbenkian, the holder of a patent, sued for money that Penn owed as a licensor. Penn defended by attacking the validity of the patent. On summary judgment motion, Gulbenkian maintained that Penn was estopped from attacking the patent's validity because Penn had obtained the license eight years

before the suit was brought and had never before complained about the patent. The Texas Supreme Court reversed a grant of summary judgment for Penn. The Court held that Gulbenkian had a right to prove his estoppel theory, which raised factual matters not resolvable on summary judgment. *Gulbenkian* makes clear that estoppel may be used by a plaintiff to foreclose a defendant from relying on certain facts or defenses. Therefore, the estoppel issue must go to the trier of fact on remand.

### CONCLUSION

We hold that summary judgment was not properly granted in this case. Although we affirm the district court's refusal to enter judgment for EDS on the basis of res judicata, we believe that several factual issues preclude, at this point, judgment for Bell. The disputed factual issues concern whether EDS had implied notice of Bell's or the United States' claim to the certificates of deposit, whether Bell's fiduciary (Acker) acquired title to the certificates of deposit or only a contractual right to title, and whether Bell is estopped from now asserting a constructive trust because of its earlier silence. The judgment of the district court is REVERSED and the case REMANDED.