In re AMBER'S STORES, INC., Debtor.

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, Plaintiff,

v.

AMBER'S STORES, INC., CIT Group/Business Credit, Inc., Lance P. Wimmer, Ron O. Craft, Lamar Roberts, and William Grimes, Defendants.

Bankruptcy No. 395–35650–HCA–7. Adversary No. 396–3061.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Feb. 19, 1997.

Robert Michael Farquhar, Winstead, Sechrest & Minick, Dallas, TX, for Amber's Stores, Inc.

Tony M. Davis, Michael C. Li, Baker & Botts, Dallas, TX, for CIT Group/Business Credit, Inc.

Charles M. Cobbe, Jackson & Walker, Dallas, TX, for Lamar Roberts.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTIONS FOR SUMMARY JUDGMENT

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court on December 30, 1996, the Motion of the CIT Group/Business Credit, Inc. for Summary Judgment Against the Texas Comptroller of Public Accounts and Lamar Roberts[1] ("CIT's Motion"), filed December 3, 1996, and the Texas Comptroller of Public Accounts' Cross Motion for Summary Judgment ("Comptroller's Motion"), filed December 27, 1996. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). After consideration of the pleadings and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Amber's Stores, Inc. ("Debtor" or "Amber's") was a retailer of arts and crafts and operated several stores in Texas. As part of its business, the Debtor regularly collected sales tax from its customers and remitted the tax funds to the Texas Comptroller of Public Accounts ("Comptroller"). The Debtor filed its Chapter 11 petition on September 8, 1995, and the case was converted to Chapter 7 on August 23, 1996.

CIT Group/Business Credit, Inc. ("CIT") and the Debtor entered into a financing agreement ("Financing Agreement"), dated October 3, 1994, whereby CIT provided the Debtor with a revolving line of credit secured by substantially all of the Debtor's assets.

John Mark Stern, Assistant Attorney General, Collections Division, Austin, TX, for Texas Comptroller of Public Accounts.

1. Lamar Roberts Cross–Claim has been dismissed by stipulation, therefore these Findings of Fact and Conclusions of Law will only discuss CIT's Motion for Summary Judgment as it applies to the Comptroller.

CIT's security interest extended to the proceeds of Amber's sales of inventory. Pursuant to the Financing Agreement, the Debtor was to deposit into specific accounts all of the daily receipts collected in each store. The funds in each store's account would then be transferred into one central bank account ("Central Account"). Thereafter, the money in the Central Account would be withdrawn by CIT and applied to satisfy Amber's debt to CIT. CIT would then loan Amber's more money on its revolving account to cover its expenses, including its sales tax obligations.

As of the time of the bankruptcy petition, the taxes collected during August 1995 and September 1st through the 8th of 1995 were not yet due. The August sales taxes, totaling $132,970.62, were due on September 20, 1995. The September sales taxes, totaling $37,495.58, were due on October 20, 1995. CIT withdrew all funds in the central account for the final time on or about September 7, 1995.

For purposes of its summary judgment motion only, CIT does not dispute that Amber's deposited all of its receipts in accordance with the Financing Agreement and that the sales tax funds collected by the Debtor's stores were not segregated from its other receipts. For purposes other than CIT's Motion (e.g. the Comptroller's Motion for Summary Judgment), there has been insufficient evidence presented on those issues.

The Debtor filed a motion to pay the prepetition sales taxes owed to the Comptroller on November 13, 1995. After the motion was denied on December 27, 1995, the Comptroller filed this adversary complaint against CIT and the Debtor alleging that $170,466.20 in sales tax owed to the Comptroller was used by CIT to satisfy Amber's debt, and as a result of that, CIT, among others, is liable under Texas Tax Code § 111.016. The complaint was thereafter amended to include Lance P. Wimmer, Ron O. Craft, Lamar Roberts, and William Grimes.

CIT seeks summary judgment based on the following argument: there is a bona fide purchaser exception to the liability imposed by Texas Tax Code § 111.016(a), and CIT is bona fide purchaser; therefore, any tax trust funds that CIT withdrew from the Debtor's accounts along with its collateral were taken free from any trust in favor of the Comptroller.

The Comptroller seeks summary judgment based on the following argument: there is not a bona fide purchaser exception to the liability imposed by Texas Tax Code § 111.016(a), but the statute is one of strict liability, and since the tax funds were mixed with CIT's collateral, CIT owes the money to the State.

### CONCLUSIONS OF LAW

For the reasons stated herein, the Court concludes that § 111.016(a) creates a trust for the benefit of the Comptroller. The collector of the sales tax is a trustee. However, anyone who receives money from the trustee without knowledge or notice of the character of the funds is an innocent transferee of trust property, not a trustee, and thus is not liable under § 111.016(a). The Court further concludes that Texas trust law allows the beneficiary of a trust to reclaim trust property, wrongfully transferred by the trustee, from a transferee who is not a bona fide purchaser. Therefore, if the transferee has knowledge that it received trust property, the beneficiary may, subject to any tracing requirements, recover its property from the transferee.

▉ The Court's decision on these motions turns on its resolution of some novel issues regarding Texas Tax Code § 111.016(a). The issues appear to be ones of first impression in Texas law, therefore, this Court must resolve them by anticipating a ruling by the Texas Supreme Court.[2] It is not for this Court to adopt any innovative theories of state law.[3] Furthermore, "when a statute is clear and unambiguous, no construction by the court is necessary, and the words will be given their plain meaning."[4]

---

2. *Occidental Chem. Corp. v. Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir.1996).

3. *Id.*

4. *Raines v. Sugg*, 930 S.W.2d 912, 913 (Tex. App.—Fort Worth 1996, no writ).

## A. Texas Tax Code § 111.016(a) is a Strict Liability Statute as to Collectors of Sales Tax

Both Motions turn on the decision of whether § 111.016(a) imposes strict liability on persons who "receive or collect" sales tax. Texas Tax Code § 111.016(a) provides:

> Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected.[5]

■ Following the Texas rules of statutory construction, the Court believes that § 111.016(a) is in part unambiguous and in part ambiguous. The unambiguous language in question is, "[a]ny person who ... collects a tax ... holds the amount so collected in trust ... and is liable to the state for the full amount collected...." The plain import of that language requires no scienter; the mere collection imposes the liability.[6]

■ Because the plain language of the statute is clear and unambiguous as to collectors of sales tax money, the Court interprets § 111.016(a) as imposing strict liability on the collector of sales tax. Therefore, Amber's, as a collector of a tax, is a trustee for the benefit of the Comptroller, and would be strictly liable for the amount of sales tax it collected from its customers.

This does not, however, establish CIT's liability under § 111.016, because CIT was not the "collector" of the sales tax. CIT's liability must necessarily arise from the phrase "any person who receives." If that phrase were given its plain meaning, CIT, and other mere "recipients," would be trustees for the benefit of the State and would be strictly liable for the sales tax funds.

## B. CIT is not a Trustee under § 111.016(a), but a Transferee of Trust Property

■ The Court believes the phrase, "any person who receives," contains a latent ambiguity. "A latent ambiguity exists when a contract is unambiguous on its face, but fails by reason of some collateral matter when it is applied to the subject matter with which it deals."[7] Texas rules of construction provide that the general rules for construction of written instruments, such as contracts, apply to the construction of legislative acts.[8]

For the sake of this analysis, assume that all sales tax money is physically marked as such with some distinguishing symbol or word. If § 111.016(a) were literally applied, any person in possession of that money could be holding the money (traceable by its marking) in trust for the state until the sales tax is paid to the Comptroller. In this case, any person or entity who Amber's paid might be holding some portion of the sales tax money. Employees, utility companies, and any other entity to which Amber's made payment from those funds would be trustees under a literal interpretation of this statute.

■ When construing statutory language in civil cases a court "must be governed by the rules of common sense."[9] Further, "if the statute is subject to two interpretations, it should not be given one that would render enforcement impossible."[10] If the statute imposed strict liability on any person who received the money, the result would defy common sense and enforcement would be impossible. The Court finds that the word "receives" is merely a superfluous word in the statute which has the same

---

5. Tex.Tax Code Ann. § 111.016 (Vernon 1992 & Supp.1997).

6. Conversely, § 111.016(b), added by the 1995 amendments, provides for responsible party liability, and by its terms, is not a strict liability statute. It provides that certain "responsible" individuals who "wilfully fail" to remit sales tax funds are liable for their payment. Tex.Tax Code Ann. § 111.016 (Vernon 1992 & Supp.1997).

7. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282–83 (Tex.1996, no writ).

8. *Raines v. Sugg*, 930 S.W.2d 912, 913 (Tex. App.—Fort Worth 1996, no writ).

9. *Id.*

10. *Id.*

meaning as "collects,"[11] and that § 111.016(a) was intended to hold only collectors and transferees with notice liable.[12]

This conclusion is reinforced by case law interpreting this statute and prior versions of it.[13] In the *Davis* case, the Texas Court of Appeals discussed the effect of the 1987 amendment to § 111.016.[14] The 1987 amendment added the trust language to § 111.016(a). The *Davis* court seems to accept the proposition that the amendment's purpose was to clarify existing law.[15] The *Davis* court found that an agency relationship arose between the seller and the State under either version of § 111.016 and that relationship imposed a fiduciary duty upon the seller/collector.[16] The case does not suggest that the duty extends beyond the seller/collector. In fact, the only parties the case suggests are liable are the seller and the purchaser.[17]

A federal court has reached a similar interpretation that "once a consumer pays his sales taxes, liability for the payment of that tax to the State shifts to the person who receives or collects it *from the consumer.*"[18]

The foregoing leads the Court to the conclusion that § 111.016 does not make CIT strictly liable as trustee for the benefit of the State, rather, CIT is a transferee of trust property. Therefore, Texas' general trust law applies to CIT's liability in this situation.

## C. Texas Trust Law Provides a Bona Fide Purchaser Exception to Transferee Liability

 Texas Tax Code § 111.016 creates a trust for the benefit of the State of Texas.[19] As the Court has discussed above, in this case, CIT is the transferee claiming bona fide purchaser status; Amber's is the trustee who allegedly has wrongfully transferred trust property;[20] and the Comptroller is the beneficiary of the trust.

 Under Texas trust law, where trust property is wrongfully transferred, the beneficiaries of the trust cannot recover against the transferee if the transferee is a bona fide purchaser.[21] A bona fide purchaser is one who purchases in good faith for valuable consideration and without notice of claims of third parties.[22]

## D. CIT's Motion for Summary Judgment

 CIT and the Comptroller have each moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

**11.** One definition of "collect" is "to receive." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 259 (1986).

**12.** No Texas court has decided the issue of who is a trustee under the language of § 111.016(a). One court identified the issue, but did not resolve the it because the case was decided on other grounds. *Dixon v. Texas*, 808 S.W.2d 721, 724 (Tex.App.—Austin 1991, no writ).

**13.** *See Davis v. Texas*, 904 S.W.2d 946 (Tex.App.—Austin 1995, no writ); *Copeland v. Texas (In re Al Copeland)*, 991 F.2d 233 (5th Cir.1993) (emphasis added).

**14.** *Davis v. Texas*, 904 S.W.2d 946, 952 (Tex.App.—Austin 1995, no writ).

**15.** *See id.*

**16.** *Id.* at 954.

**17.** *Id.* at 952.

**18.** *Copeland v. Texas (In re Al Copeland)*, 991 F.2d 233, 237 (5th Cir.1993) (emphasis added).

**19.** TEX.TAX CODE ANN. § 111.016(a) (Vernon 1992 & Supp.1997); *Davis v. Texas*, 904 S.W.2d 946, 954 (Tex.App.—Austin 1995, no writ); *In re Al Copeland Enterprises*, 133 B.R. 837, 838 (Bankr. W.D.Tex.1991), *aff'd*, 991 F.2d 233 (5th Cir. 1993).

**20.** The Court is not making a finding that Amber's did, in fact, wrongfully transfer the sales tax trust money to CIT. The Court has not received enough evidence in this summary judgment proceeding to make such determination.

**21.** "[O]nly a party who purchases trust property for value and without notice of the trust has a claim to the property superior to that of the beneficiaries." *Gurley v. Lindsley*, 459 F.2d 268, 276, *rev'd on other grounds*, 466 F.2d 498 (5th Cir.1972). *See also, Dunn v. Second Nat'l Bank of Houston*, 131 Tex. 198, 207–08, 113 S.W.2d 165 (Tex.1938); *Settegast v. O'Donnell*, 41 S.W. 84, 16 Tex.Civ.App. 56 (1897, no writ).

**22.** *In re Winn's Stores, Inc.*, 177 B.R. 253, 256 (Bankr.W.D.Tex.1995).

Under Rule 56, summary judgment is proper if the matters presented to the Court show that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.[23] In making its determination, the Court must draw inferences from the underlying facts in a light most favorable to the non-movant.[24] The initial burden of proof that there are no genuine issues of material fact is on the movants, but once the movants have met their initial burden, the non-movant must set forth specific facts showing that there is a genuine issue for trial.[25]

It is incumbent upon CIT, for purposes of its motion, to show, among other things, that there is no fact issue as to its notice of the Comptroller's claim to the funds in the central account. CIT does not meet this burden.[26] For purposes of its Motion for Summary Judgment, CIT does not dispute that Amber's did not segregate the sales tax money from its other receipts and that Amber's did, in fact put all the money it collected into the accounts. Further, in his affidavit, Mr. John Hanley, the former vice president of CIT and party responsible for the loan made to the Debtor, stated:

> I am not aware that Amber's segregated sales tax receipts from the proceeds of the sale of its inventory prior to the Petition Date. **I believe that Amber's did not do so** because segregation would have tied up cash that could have been used for inventory purchases, payroll and other working capital needs. I do not believe that Amber's was required to segregate the sales tax receipts from the proceeds of the sale of inventory, and Amber's never asked

CIT to establish a separate account dedicated to holding sales tax collections.[27]

By the above quoted affidavit, CIT admits that there is at least a fact issue as to whether it had notice that the sales tax money was in the central account along with its collateral. Furthermore, the affidavit indicates that CIT had knowledge which should have caused it to inquire as to whether the sales tax funds were included in the account. "[W]hatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained." [28]

■ CIT argues that it could not have had notice of the Comptroller's claim to the tax funds. Its argument is that since the taxes were not due until September 20, 1995 and October 20, 1995, and CIT withdrew the money on or about August 8, 1995, Amber's had not breached its trust at the time CIT withdrew the money. In other words, CIT asserts that the Comptroller could not have had a claim to the trust money until the payments were due, thus it did not have a claim to the money when Amber's transferred it to CIT. CIT cites the *Restatement (Second) of Trusts* § 284 for support of the proposition that a bona fide purchaser, in the trust law context, is a person "who takes for value and *without notice of the breach of trust.*" Texas law has not expressly adopted this definition. The Texas rule states that the transferee must be without notice of "claims." [29] Furthermore, a Texas case interpreting § 111.016 held that, "because of the implicit agency relationship set forth in the Act, *sales tax monies are state funds*

**23.** *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122 (5th Cir.1988).

**24.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

**25.** *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**26.** The Court does not intend by this conclusion that CIT has successfully proven all other elements of its case.

**27.** *Affidavit of John Hanley in Support of Motion of CIT Group/Business Credit, Inc. for Summary Judgment Against the Texas Comptroller of Public Accounts and Lamar Roberts,* pp. 3–4 (emphasis added).

**28.** *E.D. Sys. Corp. v. Southwestern Bell Tele. Corp.,* 674 F.2d 453, 459 (5th Cir.1982).

**29.** *Gurley v. Lindsley,* 459 F.2d 268, 276, *rev'd on other grounds,* 466 F.2d 498 (5th Cir.1972).

*from the moment of the seller's collection,* ...."[30] Therefore, even though the payments weren't yet due, the Comptroller had a claim to the money at the moment of its collection and any breach of trust would have occurred at the time Amber's transferred the money to CIT. If CIT knew or should have known that there might be tax money in the accounts when they were withdrawn, then it knew of a possible claim to the money.

 Additionally, "[t]he issue of notice is factual, and should not be resolved by the court as a question of law unless 'there is no room for ordinary minds to differ as to the proper conclusions to be drawn from the evidence.'"[31] Upon the evidence submitted by CIT in support of its motion, there is room for ordinary minds to differ on the issue of notice.

The Court finds that CIT's Motion should be denied on the grounds that an essential element of its defense remains an unresolved and material issue of fact.

### E. The Comptroller's Motion for Summary Judgment

The Court finds that the Comptroller's Motion is denied.

All findings of fact that could be construed as conclusions of law shall be so construed and vice versa. All relief not expressly granted is denied.

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

---

**30.** *Davis v. Texas,* 904 S.W.2d 946, 953 (Tex. App.—Austin 1995, no writ).

**31.** *E.D. Sys. Corp. v. Southwestern Bell Tele. Corp.,* 674 F.2d 453, 459–60 (5th Cir.1982).