TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00330-CV






Stoker Management, Inc. d/b/a/ JaniKing of Austin, Appellant



v.



John Sharp, Comptroller of Public Accounts of the State of Texas; and


Dan Morales, Attorney General of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 95-14514, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 






 This is a sales tax collection case arising under Texas Tax Code section 111.016 (West
1992). The State Comptroller of Public Accounts ("Comptroller") audited Stoker Management, Inc.
("Stoker") and determined that Stoker was responsible for remitting to the Comptroller the sales tax on
services performed by its franchisees. The Comptroller assessed sales tax liability against Stoker in the
amount of $169,408.92, inclusive of tax, penalty, and interest. Stoker disagreed with the assessment and
filed a Petition for Redetermination. A hearing was held before an administrative law judge, and Stoker
was assessed with $181,298.01 in sales tax liability, penalty, and interest. Stoker filed a declaratory
judgment action in district court seeking a judicial determination that Stoker was not liable for the sales tax. 
The trial court granted the Comptroller's motion for summary judgment and held that Stoker was liable for
the tax in question, plus an additional $43.21 per day from July 31, 1995, until paid, plus costs. In three
points of error, Stoker appeals the summary judgment. We will affirm.

BACKGROUND

 The facts in this case are undisputed. Stoker owns and operates JaniKing of Austin, the
Austin Regional Franchisor Office for JaniKing International. Stoker bought JaniKing of Austin after having
operated it since its opening in May 1985. Stoker is a corporation formed by Dennis and Christine Shortt. 
Dennis Shortt is president of Stoker and Christine Shortt is vice-president, secretary, and treasurer. 
Christine Shortt serves as the chief administrator for JaniKing of Austin, and Dennis Shortt is the regional
director.

 Stoker, doing business as JaniKing of Austin, sells commercial cleaning services and
JaniKing franchises. For a royalty, Stoker grants independent franchises to individuals or entities who
perform janitorial services using the "JaniKing" name. Stoker performs administrative services, obtains
cleaning accounts, and provides business training and support for its franchisees. During the audit period
in question, Stoker employed salespeople to actively solicit new cleaning accounts. Furthermore, Stoker
personnel negotiated the prices for cleaning services with new customers, and, on occasion, Stoker itself
performed cleaning services when customers were dissatisfied with a franchisee's performance.

 In its general operations, Stoker processed and mailed invoices to customers whose offices
were cleaned by its franchisees. Stoker also collected the payment for the services performed by the
franchisees, including all sales taxes. In some cases, however, a franchisee directly billed the customers
and collected the payment for services it performed. In those cases the franchisee submitted all the money
collected, including the sales tax, to Stoker.

 Each month during the period in dispute, Stoker generated a report for each franchisee
detailing: (1) the money collected from the accounts for services performed, (2) the sales tax collected on
those services, (3) the deductions from this amount for Stoker's royalties, and (4) any other charges, such
as supplies purchased by the franchisee from Stoker.

 In the ordinary course of its business, Stoker billed customers for services rendered by a
franchisee and then deducted Stoker's royalty payment from the amount received. Stoker would then send
the remaining balance to the franchisees in a check which included the sales tax. This check was also
accompanied with a final invoice that clearly indicated the amount of sales tax owed to the State. Stoker
told the franchisees that they were responsible for remitting the sales tax. In the cases where a franchisee
directly billed a JaniKing customer, the franchisee would forward to Stoker the entire payment received
from the customer. Stoker would then deduct its royalty and forward the remainder, including the sales
tax, back to the franchisee.

 On May 14, 1991, Stoker requested "an official ruling" from the Comptroller to determine
who, as between Stoker and the franchisees, was responsible for remitting the sales tax collected on the
cleaning services performed. On June 4, 1991, Stoker was informed, in writing, by the Comptroller that
Stoker was responsible for remitting the sales tax owed to the State. Stoker did not begin to remit the sales
tax it collected to the State until October 1992.

 Stoker was audited and assessed tax, penalty, and interest on the sales tax it collected and
sent to the franchisees during the period between June 1991 and October 1992. Stoker was held liable
by the trial court for the delinquent taxes pursuant to Texas Tax Code section 111.016, which states:

Any person who receives or collects a tax or any money represented to be a tax from
another person holds the amount so collected in trust for the benefit of the state for the full
amount collected plus any accrued penalties and interest on the amount collected. 



Tex. Tax Code § 111.016 (West 1992). Stoker appeals.



DISCUSSION

 In three points of error, Stoker contends that the trial court erred in: (1) finding Stoker liable
for the sales taxes Stoker received because section 111.016 applies only to "sellers" or "retailers" as
defined by section 151.008 of the Texas Tax Code, and (2) granting the Comptroller's motion for summary
judgment because there is a genuine issue of material fact as to whether Stoker is a "seller" or "retailer" of
janitorial services. Since these points are interrelated, we will address them together.

 Stoker does not dispute that sales tax is owed on the cleaning services performed, but
contends that the franchisees, not Stoker, are liable for the sales tax not remitted to the State. Stoker
contends that section 111.016 requires Stoker to be a seller or retailer as defined by section 151.008 of
the Tax Code in order for it to be liable for the unremitted tax. (1) As authority for its position that section
111.016 applies only to sellers or retailers of taxable goods or services, Stoker cites Davis v. State, 904
S.W.2d 946 (Tex. App.--Austin 1995, no writ), Dixon v. State, 808 S.W.2d 721 (Tex. App.--Austin
1991, writ dism'd w.o.j.); In Re Amber's Stores, 205 B.R. 828 (Bankr. N.D. Tex. 1997).

 We conclude, however, that the cases cited by Stoker are distinguishable and are therefore
not instructive in the present case. Neither Dixon nor Davis holds that liability under section 111.016
requires that a collecting party be a seller or retailer. Furthermore, although this Court addressed section
111.016 in Davis and Dixon, those cases, unlike the present one, were decided upon the basis of tortious
conversion of tax monies. See Davis, 904 S.W.2d at 954; Dixon, 808 S.W.2d at 724. 

 Amber's Stores, on the other hand, is distinguishable from the present case on its facts. 
In that case, Amber's Stores entered into a financing agreement with CIT. The agreement required
Amber's Stores to send its entire daily sales receipts to a central account held by CIT. The sales receipts
did not segregate the sales tax owed to the State. In Re Amber's Stores, 205 B.R. at 829-830. The
Comptroller brought suit against Amber's Stores and its creditor, CIT, to recover unremitted sales taxes. 
In denying CIT's motion for summary judgment, the bankruptcy court determined a fact issue was present
as to whether CIT had notice that sales tax money was in the central account as well as the collateral. Id.
at 833. The present case is distinguishable from Amber's Stores because, unlike CIT, Stoker had
considerable control over the operations of its franchisees, whereas CIT merely provided a financing
service for Amber's Stores. Furthermore, unlike Amber's Stores, Stoker segregated the sales tax receipts
on the invoices it sent to the franchisees. Finally, unlike Amber's Stores, it is undisputed that Stoker knew
that it was sending sales tax money to its franchisees.

 The plain and unequivocal language of section 111.016 states that money that is received
or collected as a tax is held by the collecting party "in trust for the benefit of the state," and that the
collecting party is "liable for the full amount collected." Tex. Tax Code Ann. § 111.016. This statute
concerns the authority and scope of the Comptroller's ability to collect all taxes, not just sales taxes. 
Therefore, we reject Stoker's contention that this section applies only to sellers or retailers as defined under
section 151.008 of the Tax Code.

 However, even if we were to assume the validity of Stoker's argument that section 111.016
applies only to sellers and retailers, Stoker would still be liable because the record indicates that Stoker
was, in fact, a seller or retailer of janitorial services. Stoker argues that because its franchisees performed
the janitorial services in question, the franchisees, and not Stoker, are the sellers and retailers of those
services. Moreover, Stoker contends that because it merely acted as a conduit between the sellers and
the purchasers, it was more like a purchaser than a provider of a taxable service. Therefore, Stoker argues
that it is not liable to the Comptroller for the taxes which Stoker collected and remitted to its franchisees. 
We disagree.

 The record lends no support to Stoker's contention that it was not a seller or retailer of a
taxable service. Although it is undisputed that the actual cleaning services were usually performed by
Stoker's franchisees, it is also undisputed that Stoker actively solicited cleaning accounts, employed
salespeople, negotiated the prices for cleaning services, and, on occasion, actually performed cleaning
services when customers were dissatisfied with a franchisee's service. Moreover, the record clearly
indicates that the customers' accounts belonged to Stoker and that Stoker was, in fact, the seller or retailer
of the janitorial services which were contracted out to be performed by the franchisees. Therefore, we are
not persuaded by the argument that Stoker merely acted as a conduit between its franchisees and their
customers.

 Finally, we conclude that a fiduciary relationship existed between Stoker and the State. 
See Dixon, 808 S.W.2d at 723. Stoker clearly secured and controlled its customers' accounts, and
collected payment and sales tax for the cleaning services performed. Moreover, Stoker knew that it had
received sales tax money owed to the State. Stoker's knowledge was evidenced by the monthly reports
Stoker prepared for its franchisees which specifically stated the sales tax owed. When Stoker remitted the
sales taxes it had collected to its franchisees for them to pay, it did so at its own peril.

 Having concluded that Stoker falls squarely within the scope of liability under section
111.016 of Texas Tax Code, we overrule Stoker's three points of error and affirm the judgment of the trial
court.



 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: December 11, 1997

Publish
1. In relevant part, the Tax Code defines a "seller" or "retailer" as:


a person engaged in the business of making sales of taxable items of a kind the receipt from
the sale of which are included in the measure of the sales or use tax imposed by this
chapter.


Tex. Tax Code Ann. § 151.008(a) (West 1992).



, CIT, to recover unremitted sales taxes. 
In denying CIT's motion for summary judgment, the bankruptcy court determined a fact issue was present
as to whether CIT had notice that sales tax money was in the central account as well as the collateral. Id.
at 833. The present case is distinguishable from Amber's Stores because, unlike CIT, Stoker had
considerable control over the operations of its franchisees, whereas CIT merely provided a financing
service for Amber's Stores. Furthermore, unlike Amber's Stores, Stoker segregated the sales tax receipts
on the invoices it sent to the franchisees. Fi