Linda Brine COWETT, Appellant,

v.

Nadene T. BRINE, Appellee.

No. 9399.

Court of Appeals of Texas,
Texarkana.

Nov. 19, 1985.

Rehearing Denied Dec. 17, 1985.

---

Charles Attaway, Attaway & Shumaker, Texarkana, for appellant.

Lynn Cooksey, Texarkana, for appellee.

GRANT, Justice.

This is a grandparent visitation case. Linda Brine Cowett appeals the granting of visitation rights for the mother of her deceased ex-husband to visit the adopted son of appellant and her deceased ex-husband. Appellant complains that her former mother-in-law has no standing to move for and obtain visitation rights.

The facts of the case are that Jimmy and Linda Brine, husband and wife, adopted an infant child in June of 1981. The couple was divorced in 1983. Jimmy Brine was appointed managing conservator of the adopted child, and Linda Brine was appointed the possessory conservator. No other person was granted access to or visitation with the child. Linda Brine remarried and is now Linda S. Cowett. Approximately eight months after the divorce, Jimmy Brine was killed in a hunting accident. At that time, the child was visiting with his mother, Mrs. Cowett, and has continued to reside with her. In December of 1983, Nadine Brine, mother of Jimmy Brine, moved the court to appoint her managing conservator of the child and in February, 1985, she filed another motion alternatively seeking access to the child. In May 1985, the trial court granted specific visitation to Mrs. Brine with the child.

In the chaos of the legislative sessions, three Subsections (e) were passed under Tex.Fam.Code Ann. § 14.03 (Vernon Supp. 1985). (The third Subsection (e) does not relate to access to a child by grandparents.) The two applicable subsections are as follows:

(e) In a suit affecting the parent-child relationship, including a suit brought for the sole purpose of seeking the relief authorized by this subsection and including a proceeding for the modification of a previous order, and without regard to whether or not the appointment of a managing conservator is an issue in the suit, the court may issue and enforce orders granting to a grandparent of the child reasonable access to the child if a parent of the child is, at the time that the relief is requested, a natural parent of the child, if access to the grandparent is in the best interest of the child, and if:

(1) the grandparent seeking access to the child is a parent of a parent of the child and that parent of the child has been incarcerated in jail or prison during the three-month period preceding the filing of the petition or has been found by a court to be incompetent or is dead; or

(2) the parents of the child are divorced or have been living apart for the three-month period preceding the filing of the petition or a suit for the dissolution of the parents' marriage is pending; or

(3) the child has been abused or neglected by a parent of the child; or

(4) the child has been adjudicated to be a child in need of supervision or a delinquent child under Title 3 of this code; or

(5) the grandparent seeking access to the child is the parent of a person whose parent-child relationship with the child has been terminated by court decree; or

(6) the child has resided with the grandparent seeking access to the child for at least six months within the 24-month period preceding the filing of the petition.

(e) If the court finds that it is in the best interests of the child as provided in Section 14.07 of this code, the court may grant reasonable access rights to either the maternal or paternal *grandparents of the child;* and to either the natural maternal or paternal grandparents of the child whose parent-child relationship has been terminated or who has been adopted before or after the effective date of this code. This relief may not be granted unless one of the child's legal parents at the time the relief is requested is the child's natural parent. The court may issue any necessary orders to enforce the decree.

Looking at the legislative history involving visitation by grandparents, we find that Title 2 of the Family Code was first proposed in 1973. The bill had no mention of the rights of grandparents or other family members, except parents, in relationship to access. However, Tex.Fam.Code Ann. § 11.03 (Vernon Supp.1985) allowed a suit to be brought by any person with an interest in the child. Grandparents have been determined to have the type of interest in their grandchildren which gives them standing under this provision. *Watts v. Watts,* 573 S.W.2d 864 (Tex.Civ.App.-Fort Worth 1978, no writ). Furthermore, Tex. Fam.Code Ann. § 14.03(a) (Vernon Supp. 1985) did not limit the trial court as to who could be appointed managing conservator or possessory conservator.

In the legislative process, Tex.Fam.Code Ann. § 14.03(d) (Vernon 1975) was added by a committee amendment. This amendment was intended to make explicit what was already implicit by providing for visitation by maternal or paternal grandparents of the child.[1]

In 1975, this section was amended to make the language consistent with the terminology in the remainder of the code. The word *visitation* was changed to *access.*

In 1977, the section was completely rewritten by Senate Bill 213. According to the bill analysis, this bill "would clarify certain provisions of the Code with respect to the effect of a termination and/or adoption decree on a grandparent's access to a child." [This bill became what is now the second Subsection (e) as set forth above by adding new language to the existing Subsection (d).][2]

The bill analysis states under background information:

Several provisions of the Code relate to the effect of termination decrees or adoption decrees on the rights and duties of the parents. A decree terminating a parent's rights divests the parent of any legal rights in or duties toward the child. An adoption decree, on the other hand, vests in the adoptive parents all the rights and duties of a natural parent. None of the provisions of the Code ex-

---

**1.** "Subsection (d) was added by Committee amendment to the bill to resolve any questions of whether grandparents may have an adjudicated interest in a grandchild. Section 11.09 does not list grandparents as persons to whom notice of suits affecting the parent-child relationship must be given, but does provide that any person with an adjudicated interest in a child is entitled to notice. The reasonable construction of the Code would require notice be given to grandparents only when reasonable visitation rights have been awarded them. Without much question, this subsection would authorize grandparents to either intervene in a Subtitle A suit affecting their grandchildren, or

institute a Subtitle A suit under section 11.03." Smith, *Texas Family Code Symposium-Title 2: Parent and Child,* 5 Texas Tech L.Rev. 428 (1974).

**2.** This bill also amended Section 15.07 by adding, "Nothing in this chapter shall preclude or affect the rights of a natural maternal or paternal grandparent to reasonable access under Section 14.03(d) of this code." Tex.Fam.Code Ann. § 15.07 (Vernon Supp.1985). A new section was also added to Section 16.09 adding this same language. Tex.Fam.Code Ann. § 16.09(d) (Vernon Supp.1985)

cept subsection (d) of Sec. 14.03 granting access rights to a grandparent if the court so orders, specifically provide for the rights and duties of natural grandparents or the effect of adoption or termination upon those rights. Thus, it is unclear what effect, if any, adoption or termination has upon the grandparents' access to a child. An appellate court has held that a grandparent may not be granted access to a child if the termination or adoption decree was entered before the effective date of Title II of the Family Code.[3]

In the Judiciary Committee's section-by-section analysis, Section 1 is explained as follows:

> Section 1. Amends Subsection (d) of Sec. 14.03 to provide that reasonable access rights may be granted to a grandparent where a termination or adoption decree was entered before the effective date of the Code. Provides, further, the access may not be granted unless the managing conservator is a natural parent. Thus, access would no longer be available to grandparents where the child is adopted, for example, by the other set of grandparents or family members, or by non-family members.

The purpose of the 1977 amendment was not to restrict or narrow grandparent visitation, but rather to expand it to cover the situation which existed in *Deweese v. Crawford*, 520 S.W.2d 522 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.). Therefore, the sentence which states that, "This relief may be not be granted unless one of the child's legal parents at the time the relief is requested is the child's natural parent" was meant to apply only to the expanded portion of the statute which allowed such visitation even after the parent-child relationship had been terminated or an adoption had been granted. It was not meant to prevent the maternal or paternal grandparents of the child through adoption from having access rights.

In 1983, a bill passed amending Section 14.03 by adding a new Subsection (b) which renumbered the old Subsection (d) as (e). In this same session another Subsection (e) was passed, and it attempted to repeal the language of the second Subsection (e) (above) by striking out the language and bracketing the deleted language and underlining the new language; however, the amendment referred to Subsection (d) and not to the new designation (e). Thus it did not have the effect of repealing the old language. This was Senate Bill 79, and the Judiciary Committee in its bill analysis said that the purpose of this bill was "to remove court-imposed restriction on grandparent access to a child and to clarify when such access may be awarded." The bill analysis under background information says:

> Under current law, a court may grant the grandparents of a child visitation rights to the child, if the court deems access to be in the best interest of the child. Although the statute nowhere requires it, state courts have insisted that a managing conservator be appointed before a grandparent may sue to acquire visitation rights to the child. Thus, in cases in which the mother or father dies, and the other parent assumes custody of the child and refuses to allow visitation by the maternal or paternal grandparents, the grandparents are left without any legal means of seeing the grandchildren, unless they petition the court to appoint a managing conservator and then request visitation privileges. Critics charge that such a circuitous route is expensive and tedious, especially if the grandparents do not want to challenge the parent's custody, but just seek to ensure their access to the child.

Under the section-by-section analysis, the document states as follows:

> SECTION 1. Amends Section 14.-03(d) of the Family Code to allow court to award grandparent access to a child in

---

**3.** The bill analysis was apparently referring to the case of *Deweese v. Crawford,* 520 S.W.2d 522 (Tex.Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.) which held that where a child had been adopted by the natural mother's second husband after the death of the first husband who was the natural father, that the natural paternal grandparents were no longer paternal grandparents within the meaning of the statute.

a suit brought for that purpose, irrespective of whether conservatorship is at issue, if it is in the best interests of the child, if a parent is the natural parent of a child, and if any one of the listed circumstances has occurred.

Again, the purpose of this legislation was not to limit or reduce visitation rights of grandparents under the code, but was for the purpose of eliminating the necessity that a managing conservator be appointed before the grandparent could seek access to the child through the courts.

The Legislature in 1985 corrected the lettering by changing the second subsection to Subsection (f), not changing the text of either subsection.

The Legislature by these amendments to the initial language of the Family Code was attempting to allow visitation by the natural grandparents after a termination or adoption only in the limited situation in which one of the parents [as defined by Tex.Fam.Code Ann. § 11.01(3) (Vernon 1975)] was a natural parent of the child. Thus, when the child's relationship with both of the natural parents had been entirely severed, the law would prevent interference from the natural parents or grandparents to this new beginning in the adoptive home. However, when the statute is construed to also apply to the adoptive grandparents, then no grandparents would have legal access to the child in a situation in which both parents are not natural parents. A careful study of the legislative intent clearly shows that the Legislature was not attempting to eliminate access by the adoptive grandparents, who became for all legal purposes the grandparents of the child through the judgment declaring the adoption.

In spite of the clear indications of the legislative intent from the history of the statute, this Court is bound by rules of construction. The Court must construe a statute as written, and if possible, ascertain its intention from the language used therein and not look for extraneous matters to be used as a basis for reading into the statute an intention not expressed or intended to be expressed therein. *Govern-*

*ment Personnel Mut. Life Ins. Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525 (1952); *Baylor University Medical Center v. Borders,* 581 S.W.2d 731 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). When a statute is clear and unambiguous, no construction by the court is necessary; instead, the words will be given their common meaning. *City of El Paso v. Public Utility Commission of Texas,* 609 S.W.2d 574 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.).

■ Another basic rule of construction is that specific provisions of a statute control over general provisions. *Caddell v. Lufkin Land & Lumber Co.,* 234 S.W. 138 (Tex.Civ.App.-Beaumont, 1921), *aff'd,* 255 S.W. 397 (Tex.Comm'n App.1923, opinion adopted). Therefore, when the Legislature enacted a specific provision for grandparent access, this pre-empted the general provisions of Section 11.03 and Section 14.03(a) by expressly providing the situation in which grandparent access was available under the Family Code.

■ The specific language of the subsections involved cannot be found to be ambiguous in their application to the present case. If the words are clear, a statute is to be interpreted by its express language. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814 (Tex.1983); *Ex parte Roloff,* 510 S.W.2d 913 (Tex.1974). The first Subsection (e) above grants grandparent visitation rights only "if a parent of the child is, at the time that the relief is requested, a natural parent of the child." The second Subsection (e) states, "This relief may not be granted unless one of the child's legal parents at the time the relief is requested is the child's natural parent." Grammatically and by common useage, the relief referred to is the granting of reasonable access rights to the grandparents. Thus, in the present case, grandparent visitation is not authorized. The language appearing on the face of the statute cannot be ignored by this Court, and if the Legislature wishes to express a different intent, appropriate amendments must be made by that body.

The order of the trial court is reversed and vacated.