Todd David RAINES and Lynn
Allison Raines, Appellants,

v.

Thomas Richard SUGG and Patricia
Sugg, Appellees.

No. 2–95–171–CV.

Court of Appeals of Texas,
Fort Worth.

Sept. 19, 1996.

*Cincinnati Life Ins. Co. v. Cates,* 39 Tex. Sup.Ct.
J. 916, 919 (July 8, 1996). Under the circum-

Bruce A. Martin, Smith & Martin, Wichita
Falls, for Appellants.

Don Snodgrass, Mason & Snodgrass,
Wichita Falls, for Appellees.

Before DAY, CHUCK MILLER, and
SHIRLEY W. BUTTS (Retired), (Sitting by
Assignment), JJ.

## OPINION

CHUCK MILLER, Justice (Assigned).

This is a suit for grandparent visitation of
a minor child, D.T.R. The child's maternal
grandparents, Thomas Sugg and Patricia

stances of the present case, we decline to do so.

Sugg, filed their original petition for grandparent's access rights against Todd David Raines and Lynn Allison Raines on December 2, 1993. Before that, the uncontested chronology of events germane to this action were: On August 16, 1990, D.T.R. was born to his married, natural parents, Todd David Raines and Marjean Sugg Raines, the latter being the Suggs' daughter. Marjean Sugg Raines died in June 1992. Todd Raines married Lynn Allison Raines in July 1993. D.T.R. was legally adopted by Lynn Allison Raines in August 1993.

After the filing of the original petition, the Raineses filed various motions, including a motion for summary judgment. In February 1994, the motion for summary judgment was overruled. In March 1995, a hearing was held on the Suggs' original petition. At the conclusion of that hearing, the trial judge granted the Suggs' prayer for relief allowing them access to D.T.R. The Raineses gave timely notice of appeal.

In their sole point of error, the Raineses allege that the trial judge should have granted their motion for summary judgment because the Suggs have no standing to ask for access to D.T.R. The Raineses maintain that at the time of the filing of the original petition, the Suggs did not meet the statutory criteria of a grandparent eligible for court-ordered grandchild access. The crux of the Raineses' point of error is that the Suggs were no longer grandparents under the applicable statutes as of August 1993 when Lynn Raines adopted D.T.R. The Raineses assert that the granting of the adoption retroactively placed Lynn Raines in the position of the natural mother, thus cutting off the status of the Suggs as maternal grandparents. We affirm.

▄▄▄ In order to decide the correctness of the Raineses' position, we will be called upon to examine the applicable statutes.[1] Of

course, when a statute is clear and unambiguous, no construction by the court is necessary, and the words will be given their common meaning. *City of El Paso v. Public Util. Comm'n,* 609 S.W.2d 574, 579 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.) (op. on reh'g). Should there be the need for construction of statutory language in civil cases, the general rules of statutory construction are:

1) The court must be governed by the rules of common sense, *HSAM, Inc. v. Gatter,* 814 S.W.2d 887, 888 (Tex.App.— San Antonio 1991, writ dism'd by agr.) (op. on reh'g);

2) the court must look to the intent of the legislature in enacting a statute, *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993);

3) the court must construe as written, and if possible, ascertain its intention from the language used therein and not look for extraneous matters for an intention not stated in the statute, *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984);

4) if a statute is subject to two interpretations, it should not be given one that would render enforcement impossible, *see Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991);

5) the general rules for the construction of all written instruments apply to the construction of legislative acts, *Baylor Univ. Med. Ctr. v. Borders,* 581 S.W.2d 731, 733 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

*See* TEX. GOV'T CODE ANN. §§ 311.001–.032 (Vernon 1988 & Supp.1996).

The law in effect at the time this petition was filed was contained in subsections 14.03(e)(1), (f), and (g) of the Texas Family Code.[2] Both parties agree that other provisions of the Family Code applicable to grand-

---

1. There was no substantive change in the law between the time D.T.R. was born and the original petition was filed.

2. In 1995, the legislature recodified and renumbered Title 2 of the Family Code. Act effective

Aug. 31, 1987, 70th Leg., R.S., ch. 587, § 1, 1987 Tex. Gen. Laws 2304, 2305 (TEX. FAM. CODE ANN. § 14.03(e)(1), (f), (g) (Vernon Supp.1993)). Former section 14.03(e) is now contained in sections 153.432 and 153.433, except subsection (e)(3),

parents and minor grandchildren at that time, specifically, subsections 11.03(b), (c),[3] 14.03(a), (b), (c), (d), (e)(2)-(6), do not apply to the fact situation in this case.

Subsection 14.03(e) provided as follows:

(e) In a suit affecting the parent-child relationship, including a suit brought for the sole purpose of seeking the relief authorized by this subsection and including a proceeding for the modification of a previous order, and without regard to whether or not the appointment of a managing conservator is an issue in the suit, the court may issue and enforce orders granting to a *biologic or adoptive* grandparent of the child reasonable access to the child if a parent of the child is, at the time that the relief is requested, a *biologic or adoptive* [natural] parent of the child, if access to the grandparent is in the best interest of the child....

Act effective Aug. 31, 1987, 70th Leg., R.S., ch. 587, § 1, 1987 Tex. Gen. Laws 2304, 2304. Subsection 14.03(e)(1) provided as follows:

(1) the grandparent seeking access to the child is a parent of a parent of the child and that parent of the child has been incarcerated in jail or prison during the three-month period preceding the filing of the petition or has been found by a court to be incompetent *or is dead....*

*Id.* at 2305. Subsection 14.03(f) provided:

(f) *To obtain an order authorized by Subsection (e) of this section, a grandparent may:*

(1) *initiate an original suit affecting the parent-child relationship;*

(2) *file a petition for further action in the court having jurisdiction over the child; or*

which is section 153.004. Former subsection 14.03(f) is now contained in section 153.432 authorizing original suit by grandparents. Former subsection 14.03(g) is now contained in section 153.434. Tex. Fam. Code Ann. tit. 2, p. 7, Disposition Table (Vernon 1996).

3. "However, access to the child by a grandparent *is governed by the standards established by Section 14.03 of this code."* Act effective Sept. 1, 1985, 69th Leg., R.S., ch. 802, § 1, 1985 Tex. Gen. Laws 2841, 2842.

(3) *file a motion to modify a prior order of the court having jurisdiction over the child.*

*Id.* Subsection 14.03(g) provided:

(g) *Subsection (e) of this section does not apply if:*

(1) *the grandparent seeking possession of or access to the child is a parent of a person whose parental rights with the child have been terminated by court order or by death; and*

(2) *the child has been adopted by a person other than the spouse of the former spouse of the parent whose rights have terminated.*

*Id.*

The Suggs maintain they did meet the statutory requirements necessary to have standing. Reviewing the facts, they urge that: as contemplated by subsection 14.03(e), this is a suit asking that biological grandparents be given court-ordered access to their grandchild, D.T.R., whose natural father is his parent;[4] as contemplated by subsection 14.03(e)(1), the Suggs are the parents of Marjean Sugg Raines, who is the mother of D.T.R. and who is dead; as contemplated by subsection 14.03(f)(1), this is an original suit in the court having continuing jurisdiction over D.T.R.; and the disqualification of subsection 14.03(g) does not apply because, although the Suggs' daughter has died (subsection 14.03(g)(1)), D.T.R. has been adopted by the new spouse of D.T.R.'s father.

However, the Raineses urge that the adoption of D.T.R. by Lynn Allison Raines in August 1993 changed all that. They cite subsection 16.09(a), which states:

4. According to subsection 11.01(3), now section 101.024, "parent" means the mother or father and does not include a parent as to whom the parent-child relationship has been terminated. *See* Tex. Fam. Code Ann. § 101.024 (Vernon 1996). In subsection 11.01(4), now section 101.025, "parent-child relationship" means the legal relationship between a child and his biological parent. *See* Tex. Fam. Code Ann. § 101.025 (Vernon 1996).

(a) On entry of a decree of adoption, the parent-child relationship exists between the adopted child and the adoptive parents as if the child were born to the adoptive parents during marriage.

*Id.* § 16.09(a) (Vernon 1986). Interpreting the effect of adoption under the code subsection 16.09(a), which was still in effect in 1993 in the same wording interpreted by the *Ex parte Pepper* court in 1976,[5] the Raineses maintain that the adoption was a nullification of the "grandparent" status of the Suggs, retroactive to the birth of D.T.R. They refer us to *Ex parte Pepper,* 544 S.W.2d 836 (Tex. Civ.App.—Amarillo 1976), *writ dism'd w.o.j. per curiam,* 548 S.W.2d 884 (Tex.1977). In *Ex parte Pepper,* former subsection 11.05(b) was interpreted. That section stated:

(b) A final decree of adoption ends a court's continuing jurisdiction over the child, and any subsequent suit affecting the child shall be commenced as though the child had not been the subject of a suit for adoption or any other suit affecting the parent-child relationship prior to the adoption.

Act effective Jan. 1, 1974, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1414. The Amarillo court stated:

The paternal grandparents, possessing the order for visitation with the children, were given notice of the adoption proceedings. The final decree of adoption reserved no rights to them. The legal effect of the adoption decree was to end the trial court's continuing jurisdiction over the preadoption proceedings, V.T.C.A., Family Code § 11.05(b),[3] and, except for the children's right to inherit from their natural parents, V.T.C.A., Family Code § 15.07,[4] to sever old legal ties and to create new legal relationships. V.T.C.A., Family Code § 16.09.[5] Accordingly, the prior order for grandparental visitation ceased to have any legal effect upon entry of the final decree of adoption.

5. *Compare* Act effective Jan. 1, 1974, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1431 (Tex. Fam. Code Ann. § 16.09(a) (Vernon 1975)), *with* Act effective Sept. 1, 1991, 72nd

3. V.T.C.A., Family Code § 11.05(b) reads: "A final decree of adoption ends a court's continuing jurisdiction over the child, and any subsequent suit affecting the child shall be commenced as though the child had not been the subject of a suit for adoption or any other suit affecting the parent-child relationship prior to the adoption."

4. V.T.C.A., Family Code § 15.07 states: "A decree terminating the parent-child relationship divests the parent and the child of all legal rights, privileges, duties, and powers, with respect to each other, except that the child retains the right to inherit from and through its divested parent unless the court otherwise provides."

5. V.T.C.A., Family Code § 16.09 provides: "(a) On entry of a decree of adoption, the parent-child relationship exists between the adopted child and the adoptive parents as if the child were born to the adoptive parents during marriage.

"(b) An adopted child is entitled to inherit from and through his adoptive parents as though he were the natural child of the parents."

*Ex parte Pepper,* 544 S.W.2d at 839 & nn. 3– 5. Thus, continue the Raineses, the effect of adoption is to "sever old legal ties," *id.* at 839, and retroactively make D.T.R. the child of Lynn Allison Raines since the time of D.T.R.'s birth. Therefore, the Suggs are no longer the grandparents of D.T.R. and thus cannot avail themselves of the benefits of subsection 14.03(e).

The Suggs counter that the Raineses overlook subsection 16.09(f), added to section 16.09 in 1977, which states:

(f) [(d)] Nothing in this chapter shall preclude or affect the rights of a biologic or adoptive maternal or paternal grandparent to reasonable access under Sections 14.03(e), (f), and (g) of this code.

Leg., 1st C.S., ch. 15, § 5.01, 1991 Tex. Gen. Laws 281, 315 (Tex. Fam. Code Ann. § 16.09(a) (Vernon Supp.1993)).

Act effective Sept. 1, 1991, 72nd Leg., 1st C.S., ch. 15, § 5.01, 1991 Tex. Gen. Laws 281, 315 (TEX. FAM. CODE ANN. § 16.09(f) (Vernon Supp.1993)).[6] The Suggs rely on this subsection, which was added after *Ex parte Pepper.* They point to an evolving trend in the legislature liberalizing grandparents' rights to access to their grandchildren. *See generally* Wilhite, *Rights of Grandparents in Visitation and Conservatorship Actions,* 27 S. TEX. L. REV. 519 (1986).

*Cowett v. Brine,* 704 S.W.2d 832, 833–36 (Tex.App.—Texarkana 1985, writ dism'd), gives a good history of the legislative amendments during and after the 1977 legislative session, including the addition of the following language:

> Nothing in this chapter shall preclude or affect the rights of a natural maternal or paternal grandparent to reasonable access under Section 14.03(d) of this code.

*Id.* at 834 n. 2; *see* Act effective Aug. 29, 1977, 65th Leg., R.S., ch. 164, § 3, 1977 Tex. Gen. Laws 335, 335.

In interpreting the 1983 amendments of the Family Code to section 14.03, which as set out above were in all material respects the same as the versions in effect when this suit was instituted, the Texarkana court added:

> The Legislature by these amendments to the initial language of the Family Code was attempting to allow visitation by the natural grandparents after a termination or adoption only in the limited situation in which one of the parents [as defined by Tex.Fam.Code Ann. § 11.01(3)[7] (Vernon 1975) ] was a natural parent of the child. *Cowett,* 704 S.W.2d at 836.

The Raineses cite no authority for their position that takes into account the modifications to the Family Code, beginning in 1977, that the Suggs rely on. Indeed, we find that none exists. The modifications to the Family Code supporting grandparents' rights to access to their grandchildren, as laid out in this opinion, are clear and unambiguous. Thus, no construction by the court is necessary, and the words will be given their common meaning. *City of El Paso,* 609 S.W.2d at 579.

We hold that, notwithstanding subsection 16.09(a), under subsection 16.09(f), the Suggs are the grandparents of D.T.R. as contemplated by subsection 14.03(e) and are in all ways entitled to avail themselves of the grandchild access benefits of that section. Thus, we find that the modifications to the Family Code by the legislature, as set out in this opinion, completely support the Suggs' petition and the trial court's judgment in overruling the Raineses' motion for summary judgment.

The judgment of the trial court awarding the Suggs access to their grandchild is affirmed.

6. The history of this language goes back to the legislative session of 1977, the session immediately following *Ex parte Pepper,* in which the legislature added the language:
> Sec. 3. Section 16.09, Family Code, is amended by adding Subsection (d) to read as follows:
> "(d) Nothing in this chapter shall preclude or affect the rights of a natural maternal or paternal grandparent to reasonable access under Section 14.03(d) of this code." [Footnote omitted.]

Act effective Aug. 29, 1977, 65th Leg., R.S., ch. 164, § 3, 1977 Tex. Gen. Laws 335, 335.
In 1987, the legislature added:
> (d) Nothing in this chapter shall preclude or affect the rights of a *biologic or adoptive* [natu- ral] maternal or paternal grandparent to reasonable access under *Sections 14.03(e), (f), and (g)* [Section 14.03(d)] of this code.

Act effective Aug. 31, 1987, 70th Leg., R.S., ch. 587, § 3, 1987 Tex. Gen. Laws 2304, 2306.
In 1991, the legislature simply renumbered (d) to (f). Act effective Sept. 1, 1991, 72nd Leg., 1st C.S., ch. 15, § 5.01, 1991 Tex. Gen. Laws 281, 315. This language is presently contained in section 162.017(d). Act effective Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 221.

7. *See supra* note 4.