**In the Interest of K.L.V. and K.J.V., Minor Children.**

No. 2–02–252–CV.

Court of Appeals of Texas, Fort Worth.

May 15, 2003.

Charles W. McGarry, Dallas, for Appellant.

Heather L. King, Fort Worth, Gregory & Conner, P.C., Mike Gregory, Denton, for Appellee.

Panel A: LIVINGSTON, DAUPHINOT, and HOLMAN JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

This case involves litigation that occurred in London, Norway, Nevada, and Texas since the summer of 1998 until the present, principally regarding custody of the parties' two children. In four points, Father contends that (1) the trial court erred in dismissing his cause for lack of personal and subject matter jurisdiction; (2) the trial court erred in enforcing a Nevada court order; (3) the trial court erred in awarding attorney's fees and travel expenses; and (4) the trial court erred in entering a second judgment awarding additional fees. Because Father failed to comply with Texas Family Code section 152.314, we dismiss the appeal for want of jurisdiction. *See* TEX. FAM.CODE ANN. § 152.314 (Vernon 2002).

## Factual Background

Father and Mother married on June 6, 1990 in Utah. Father is a United States citizen and Mother is a citizen of Norway. K.L.V. and K.J.V., their two children who are the subject of this appeal, were born in 1991 and 1995 in Ohio. Father and Mother divorced in Nevada in August of 1998. Both parents approved an extensive written agreement concerning the custody of the two children. Under the agreement, Mother then returned to her home in Norway with the children.

In February of 2000, Father filed a motion with a Nevada district court seeking physical custody of the children and asking it to hold Mother in contempt of court for failing to return the children to Nevada. The Nevada district court granted his motion on March 29, 2000.

In May of 2000, Father and his girlfriend met Mother and the children at a hotel in Norway to celebrate K.L.V.'s birthday. After dinner, Father took the children back to his hotel suite because he said he wanted to give them a surprise. When Mother later entered the room she discovered that Father had left with the children and taken them back to Texas, which was his new residence.

On October 25, 2000, the Nevada district court entered findings of fact and conclusions of law, which included the Nevada court exercising jurisdiction over the children until another court assumed jurisdiction and relieved it of its responsibility. The court further ordered the surrender of the children's passports and ordered them to remain in Texas, where Father was currently living, until another court assumed jurisdiction. Father then filed a Suit Affecting the Parent–Child Relationship (SAPCR) in Denton County, Texas on October 30, 2000.

Mother responded by filing a special appearance in which she argued that Texas lacked personal and subject matter jurisdiction over her. She also filed an answer to the SAPCR arguing that the Nevada district court order was unenforceable because it lacked personal and subject matter jurisdiction, and the court failed to make a determination under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention").[1]

1. Mother argued that Father and his girl-   friend abducted the children when they came

On April 11, 2002, a divided Nevada Supreme Court issued a writ of mandamus holding that the child custody and visitation provisions of the divorce decree were void for want of subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). It further held that the district court erred in failing to make a determination of the children's habitual residence under the Hague Convention. It then held, as a matter of law, that the children's habitual residence was Norway. Acting in accordance with the supreme court's decision, the Nevada district court then granted Mother temporary custody of the children so that she could transport them back to Norway.

Mother immediately filed the Nevada Supreme Court's decision in the Denton, Texas district court, where the SAPCR was pending, along with a motion for an emergency writ of attachment. On April 17, 2002, after taking judicial notice of the Nevada and a Norwegian court decision, the Denton district court entered an order granting Mother temporary custody of the children so that she could transport them back to Norway. The court also awarded Mother $25,060 plus interest in travel expenses, $20,359 plus interest in attorney's fees, and $81 plus interest in court costs. Father filed a motion for new trial, which the court denied.[2] This appeal follows.

### Statutory Construction of § 152.314

■ Texas Family Code section 152.314, which is part of the UCCJEA, states that "[a]n appeal may be taken from a final order in a proceeding under this subchapter in accordance with expedited appellate procedures in other civil cases." TEX. FAM. CODE ANN. § 152.314. Although this section could be read to mean that it is discretionary whether or not an appellant chooses to proceed with an appeal under expedited procedures, we read it otherwise. We conclude that the section leaves it to the discretion of the appellant whether to seek appellate review; however, if he chooses to file an appeal, then he must do so in accordance with expedited appellate procedures as in other civil cases. *See id.*

■ Statutory construction is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989); *Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 191 (Tex.App.-Fort Worth 1995, writ denied). We construe a statute to give effect to the legislative intent. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993); *Dallas Morning News Co. v. Bd. of Tr.,* 861 S.W.2d 532, 535 (Tex.App.-Dallas 1993, writ denied). A statute shall be liberally construed to achieve its purpose and to promote justice. TEX. GOV'T CODE ANN. § 312.006(a); *City of Dallas v. Cornerstone Bank, N.A.,* 879 S.W.2d 264, 270 (Tex.App.-Dallas 1994, no writ).

■ When wording in a statute is ambiguous, we consult statutory construction rules and related legislative history. *Dallas Morning News Co.,* 861 S.W.2d at 535. The general rules of statutory construction are as follows:

(1) The court must be governed by the rules of common sense; (2) the court must look to the intent of the legislature in enacting a statute; (3) the court must construe the statute as written, and if

---

to Norway under the guise of celebrating a birthday. She claimed he then brought the children back to Texas.

**2.** The trial court then awarded Mother another $6,697.90 plus interest in attorney's fees for opposing a mandamus, $2,100 plus interest for opposing the motion for new trial, and up to $55,000 plus interest in appellate fees.

possible, ascertain its intention from the language used therein and not look to extraneous matters for an intention not stated in the statute; (4) if a statute is subject to two interpretations, it should not be given one that would render enforcement impossible; and (5) the general rules for the construction of all written instruments apply to the construction of legislative acts. *Raines v. Sugg*, 930 S.W.2d 912, 913 (Tex.App.-Fort Worth 1996, no writ); *see also* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998). Furthermore, we do not interpret a statute in a manner that will lead to a foolish or absurd result when another alternative is available. *Dallas Morning News Co.*, 861 S.W.2d at 535.

◼◼◼ If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate. *Id.* Where language in a statute is unambiguous, we must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Monsanto*, 865 S.W.2d at 939. Words in statutes have their ordinary meaning unless the statute defines them or they are connected with and used with reference to a particular trade or subject matter or are a term of art. TEX. GOV'T CODE ANN. § 312.002; *Dallas Morning News Co.*, 861 S.W.2d at 535.

◼◼◼ In construing a statute, regardless of whether the statute is considered ambiguous on its face, we may consider the object sought to be attained and the consequences of any particular construction. TEX. GOV'T CODE ANN. § 311.023; *City of*

*Dallas*, 879 S.W.2d at 270. Furthermore, every word of a statute is presumed to have been used for a purpose, and the cardinal rule of statutory construction requires that each sentence, clause, phrase, and word be given effect if reasonably possible. *Reames v. Police Officers' Pension Bd.*, 928 S.W.2d 628, 632 (Tex.App.-Houston [14th Dist.] 1996, no writ).

◼◼◼ Section 152.314 allows an appeal from a final order under "this subchapter," which refers to subchapter D, enforcement under the UCCJEA. TEX. FAM.CODE ANN. § 152.314.[3] On April 16, 2002, the Nevada district court issued its order pursuant to a writ of mandamus. Mother then filed the Nevada order in Texas. Under section 152.302, a court may enforce an order for the return of a child made under the Hague Convention as if it were a child custody determination. *Id.* § 152.302. Therefore, under the authority of section 152.302, a Texas district court adopted the Nevada order on April 17, 2002. Once the Texas court adopted the Nevada order, the order then became a final, appealable order under section 152.314. *See id.* §§ 152.302, 152.314.

Because the language of section 152.314 is susceptible of two constructions, we must apply the general rules of statutory construction. First, we will look to the legislative intent of the UCCJEA, the Hague Convention, and section 152.314. *See State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002) (holding that legislative intent

---

**3.** Father argues throughout his brief that Mother failed to follow the proper enforcement and registration procedures for the Nevada order. When this court asked both parties to submit letters concerning the jurisdictional question raised by section 152.314, Father then argued that the section was·inapplicable since the order was never proper-

ly filed and, thus, was not an enforcement action at all. Father cannot have it both ways. He cannot argue on one hand that Mother failed to comply with the procedural requirements for enforcing the order under the UCCJEA and then also argue that the section does not even apply.

should be determined from the entire act and not from isolated portions).

The UCCJEA is the successor statute to the Uniform Child Custody Jurisdiction Act (UCCJA) and was designed to remedy complaints about the UCCJA. *In re McCoy*, 52 S.W.3d 297, 302 (Tex.App.-Corpus Christi 2001, no pet.). The general objective of the UCCJEA remains the same as the UCCJA and that is to address problems associated with the growing number of custody disputes between geographically separated parents. *Phillips v. Beaber*, 995 S.W.2d 655, 659 & n. 2 (Tex. 1999). Its primary concern is the refusal of many courts to accord finality to custody decrees issued by other states, resulting in frequent relitigation of custody judgments, often to the child's detriment. *Id.* at 659. Other stated purposes of the UCCJEA include (1) discouraging the use of the interstate system for continuing controversies over child custody, (2) deterring the abduction of children, and (3) facilitating the enforcement of custody decrees of other states. *See* JOHN J. SAMPSON ET AL., TEXAS FAMILY CODE ANNOTATED § 152.101 cmt. (11th ed.2001). The UCCJEA further recognizes that "time is extremely important" in visitation and custody cases, and a "swift enforcement mechanism is desirable for violations of both custody and visitation provisions." *Id.* ch. 152, prefatory note.

Within the UCCJEA, section 152.302 gives this state the authority to enforce an order for the return of a child made under the Hague Convention. TEX. FAM.CODE ANN. § 152.302. This section recognizes the need for a speedy enforcement remedy for an order to return a child and emphasizes the primary focus of the Hague Convention, which is expedience in resolution of child custody conflicts. *See* SAMPSON, TEXAS FAMILY CODE ANNOTATED § 152.302 cmt. The introduction of the Hague Convention states that the "interests of children are of paramount importance in matters relating to their custody," and the signatories want to establish procedures to ensure their prompt return. *See* Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1988 WL 411501, at *2. Article two of the Hague Convention notes that all territories should take all appropriate measures to secure the implementation of its purpose and "shall use the most expeditious procedures available." *Id.*, art. 2, 1988 WL 411501, at *2. Article eleven states that judicial authorities shall act expeditiously in proceedings for the return of children. *Id.*, art. 11, 1988 WL 411501, at *4. Therefore, the provisions of the Hague Convention leave little doubt that their overall purpose is to use the most expeditious proceedings in child custody proceedings. Thus, when Texas adopted the UCCJEA, which included a section concerning the Hague Convention, the legislative intent included this desire for an expedient resolution. *See* TEX. FAM.CODE ANN. § 152.302; *see also* TEX. GOV'T CODE ANN. § 311.023 (stating that a court may consider the object sought to be attained of any particular statutory construction); *Citizens Bank v. First State Bank*, 580 S.W.2d 344, 348 (Tex.1979) (stating that if the language of a statute is susceptible of two constructions, one of which will carry out such manifest object and the other defeat it, it should receive the former construction).

Having considered the legislative intent of the UCCJEA and Hague Convention, we will focus now on the actual language within the statute. As we previously mentioned, section 152.314 states that "[a]n appeal may be taken." TEX. FAM.CODE ANN. § 152.314. The use of the word "may" creates a discretionary authority or grants permission. TEX. GOV'T CODE ANN. § 311.016. Thus, it is within an appellant's

discretion whether or not he brings an appeal under this subchapter.

If the appellant chooses to bring an appeal, the statute mandates that an appellant do so "in accordance with expedited appellate procedures in other civil cases." TEX. FAM.CODE ANN. § 152.314. Webster's dictionary defines "expedite" as "to accelerate the process or progress of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 799 (1981). Thus, in this section, expedited means accelerated.[4] Furthermore, other civil cases that use "expedited" procedures are considered accelerated appeals. *See* TEX.R.APP. P. 28.1–.2 (discussing accelerated appeals in civil cases); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.2003) (listing those orders that may be appealed before a final judgment and are accelerated).

This interpretation comports with the general rules for statutory construction. *See Raines,* 930 S.W.2d at 913 (stating that among other things, the court must be governed by the rules of common sense). Furthermore, this interpretation would not render enforcement impossible, but rather promotes the objective of the Hague Convention and the intent in which the UCCJEA was enacted. *Id.* We therefore conclude that appeals under section 152.314 are accelerated appeals and must comply with the accelerated appeal timetables.[5]

### Application of Accelerated Appeal Timetables

The appellate rules require an appellant to file a notice of appeal in an accelerated appeal within twenty days after the judgment or order is signed. TEX.R.APP. P. 26.1(b). Although appellant may file a motion for new trial, the motion will not extend the twenty-day notice of appeal deadline. *See* TEX.R.APP. P. 28.1; *see also Revier v. Spragins,* 810 S.W.2d 298, 299 (Tex.App.-Fort Worth 1991, no writ) (holding motion for new trial in accelerated appeal did not extend the appellate deadlines).

■ Here, the Texas district court signed the final order adopting the Nevada court order on April 17, 2002. Although appellant filed a motion for new trial on May 17, 2002, this did not extend his time for filing a notice of appeal. Appellant had to file his notice of appeal within twenty days from the signing of the April 17, 2002 order. He did not file his notice until June 11, 2002.

■ The times for filing a notice of appeal are jurisdictional in this court, and absent a timely filed notice of appeal or an extension request, we must dismiss the appeal. *See* TEX.R.APP. P. 2, 25.1, 26.3; *Verburgt v. Dorner,* 959 S.W.2d 615, 617 (Tex.1997) (holding once extension period has passed, a party can no longer invoke an appellate court's jurisdiction). Thus, we conclude that we do not have jurisdiction over this appeal because Father's notice of appeal was untimely.

### Conclusion

Having concluded that we have no jurisdiction over Father's appeal, we dismiss his appeal. TEX.R.APP. P. 42.3(a); 43.2(f).

■

---

**4.** Webster's defines accelerate as "to hasten the ordinary progress." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 10 (1981).

**5.** We recognize that section 109.002 states that an appeal from a final order shall be as in civil cases generally. TEX. FAM.CODE ANN. § 109.002 (Vernon 2002). However, when a provision of the UCCJEA conflicts with another family code provision and the conflict is irreconcilable, the UCCJEA provision takes precedence. *Id.* § 152.002; *see also In re McCormick,* 87 S.W.3d 746, 750 (Tex.App.-Amarillo 2002, no pet.).