COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-252-CV
 
IN THE INTEREST OF
K.L.V. AND K.J.V., MINOR CHILDREN
------------
FROM THE 393RD DISTRICT
COURT OF DENTON COUNTY
------------
OPINION
-----------
This case involves litigation that
occurred in London, Norway, Nevada, and Texas since the summer of 1998 until the
present, principally regarding custody of the parties' two children. In four
points, Father contends that (1) the trial court erred in dismissing his cause
for lack of personal and subject matter jurisdiction; (2) the trial court erred
in enforcing a Nevada court order; (3) the trial court erred in awarding
attorney's fees and travel expenses; and (4) the trial court erred in entering a
second judgment awarding additional fees. Because Father failed to comply with
Texas Family Code section 152.314, we dismiss the appeal for want of
jurisdiction. See Tex. Fam. Code Ann. § 152.314 (Vernon 2002).
Factual Background
Father and Mother married on June 6, 1990
in Utah. Father is a United States citizen and Mother is a citizen of Norway.
K.L.V. and K.J.V., their two children who are the subject of this appeal, were
born in 1991 and 1995 in Ohio. Father and Mother divorced in Nevada in August of
1998. Both parents approved an extensive written agreement concerning the
custody of the two children. Under the agreement, Mother then returned to her
home in Norway with the children.
In February of 2000, Father filed a motion
with a Nevada district court seeking physical custody of the children and asking
it to hold Mother in contempt of court for failing to return the children to
Nevada. The Nevada district court granted his motion on March 29, 2000.
In May of 2000, Father and his girlfriend
met Mother and the children at a hotel in Norway to celebrate K.L.V.'s birthday.
After dinner, Father took the children back to his hotel suite because he said
he wanted to give them a surprise. When Mother later entered the room she
discovered that Father had left with the children and taken them back to Texas,
which was his new residence.
On October 25, 2000, the Nevada district
court entered findings of fact and conclusions of law, which included the Nevada
court exercising jurisdiction over the children until another court assumed
jurisdiction and relieved it of its responsibility. The court further ordered
the surrender of the children's passports and ordered them to remain in Texas,
where Father was currently living, until another court assumed jurisdiction.
Father then filed a Suit Affecting the Parent-Child Relationship (SAPCR) in
Denton County, Texas on October 30, 2000.
Mother responded by filing a special
appearance in which she argued that Texas lacked personal and subject matter
jurisdiction over her. She also filed an answer to the SAPCR arguing that the
Nevada district court order was unenforceable because it lacked personal and
subject matter jurisdiction, and the court failed to make a determination under
the Hague Convention on the Civil Aspects of International Child Abduction
("Hague Convention").(1)
On April 11, 2002, a divided Nevada
Supreme Court issued a writ of mandamus holding that the child custody and
visitation provisions of the divorce decree were void for want of subject matter
jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).
It further held that the district court erred in failing to make a determination
of the children's habitual residence under the Hague Convention. It then held,
as a matter of law, that the children's habitual residence was Norway. Acting in
accordance with the supreme court's decision, the Nevada district court then
granted Mother temporary custody of the children so that she could transport
them back to Norway.
Mother immediately filed the Nevada
Supreme Court's decision in the Denton, Texas district court, where the SAPCR
was pending, along with a motion for an emergency writ of attachment. On April
17, 2002, after taking judicial notice of the Nevada and a Norwegian court
decision, the Denton district court entered an order granting Mother temporary
custody of the children so that she could transport them back to Norway. The
court also awarded Mother $25,060 plus interest in travel expenses, $20,359 plus
interest in attorney's fees, and $81 plus interest in court costs. Father filed
a motion for new trial, which the court denied. (2)
This appeal follows.


Statutory Construction of
§ 152.314
Texas Family Code section 152.314, which
is part of the UCCJEA, states that "[a]n appeal may be taken from a final
order in a proceeding under this subchapter in accordance with expedited
appellate procedures in other civil cases." Tex. Fam. Code Ann. § 152.314.
Although this section could be read to mean that it is discretionary whether or
not an appellant chooses to proceed with an appeal under expedited procedures,
we read it otherwise. We conclude that the section leaves it to the discretion
of the appellant whether to seek appellate review; however, if he chooses to
file an appeal, then he must do so in accordance with expedited appellate
procedures as in other civil cases. See id.
Statutory construction is a question of
law. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989); Holmans
v. Transource Polymers, Inc., 914 S.W.2d 189, 191 (Tex. App.--Fort Worth
1995, writ denied). We construe a statute to give effect to the legislative
intent. Tex. Gov't Code Ann. § 312.005 (Vernon 1998); Monsanto Co. v.
Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993); Dallas
Morning News Co. v. Bd. of Tr., 861 S.W.2d 532, 535 (Tex. App.--Dallas
1993, writ denied). A statute shall be liberally construed to achieve its
purpose and to promote justice. Tex. Gov't Code Ann. § 312.006(a); City of
Dallas v. Cornerstone Bank, N.A., 879 S.W.2d 264, 270 (Tex. App.--Dallas
1994, no writ).
When wording in a statute is ambiguous, we
consult statutory construction rules and related legislative history. Dallas
Morning News Co., 861 S.W.2d at 535. The general rules of statutory
construction are as follows: (1) The court must be governed by the rules of
common sense; (2) the court must look to the intent of the legislature in
enacting a statute; (3) the court must construe the statute as written, and if
possible, ascertain its intention from the language used therein and not look to
extraneous matters for an intention not stated in the statute; (4) if a statute
is subject to two interpretations, it should not be given one that would render
enforcement impossible; and (5) the general rules for the construction of all
written instruments apply to the construction of legislative acts. Raines v.
Sugg, 930 S.W.2d 912, 913 (Tex. App.--Fort Worth 1996, no writ); see
also Tex. Gov't Code Ann. § 311.023 (Vernon 1998). Furthermore, we do not
interpret a statute in a manner that will lead to a foolish or absurd result
when another alternative is available. Dallas Morning News Co., 861
S.W.2d at 535.
If the statute is clear and unambiguous,
extrinsic aids and rules of statutory construction are inappropriate. Id.
Where language in a statute is unambiguous, we must seek the intent of the
legislature as found in the plain and common meaning of the words and terms
used. Monsanto, 865 S.W.2d at 939. Words in statutes have their
ordinary meaning unless the statute defines them or they are connected with and
used with reference to a particular trade or subject matter or are a term of
art. Tex. Gov't Code Ann. § 312.002; Dallas Morning News Co., 861
S.W.2d at 535.
In construing a statute, regardless of
whether the statute is considered ambiguous on its face, we may consider the
object sought to be attained and the consequences of any particular
construction. Tex. Gov't Code Ann. § 311.023; City of Dallas, 879
S.W.2d at 270. Furthermore, every word of a statute is presumed to have been
used for a purpose, and the cardinal rule of statutory construction requires
that each sentence, clause, phrase, and word be given effect if reasonably
possible. Reames v. Police Officers' Pension Bd., 928 S.W.2d 628, 632
(Tex. App.--Houston [14th Dist.] 1996, no writ).
Section 152.314 allows an appeal from a
final order under "this subchapter," which refers to subchapter D,
enforcement under the UCCJEA. Tex. Fam. Code Ann. § 152.314.(3)
On April 16, 2002, the Nevada district court issued its order pursuant to a writ
of mandamus. Mother then filed the Nevada order in Texas. Under section 152.302,
a court may enforce an order for the return of a child made under the Hague
Convention as if it were a child custody determination. Id.
§ 152.302. Therefore, under the authority of section 152.302, a Texas district
court adopted the Nevada order on April 17, 2002. Once the Texas court adopted
the Nevada order, the order then became a final, appealable order under section
152.314. See id. §§ 152.302,
152.314.
Because the language of section 152.314 is susceptible of two
constructions, we must apply the general rules of statutory construction. First,
we will look to the legislative intent of the UCCJEA, the Hague Convention, and
section 152.314. See State Dep't of Highways & Pub. Transp.
v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002) (holding that legislative
intent should be determined from the entire act and not from isolated portions).
The UCCJEA is the successor statute to the Uniform Child Custody
Jurisdiction Act (UCCJA) and was designed to remedy complaints about the UCCJA. In
re McCoy, 52 S.W.3d 297, 302 (Tex. App.--Corpus Christi 2001, no pet.). The
general objective of the UCCJEA remains the same as the UCCJA and that is to
address problems associated with the growing number of custody disputes between
geographically separated parents. Phillips v. Beaber, 995
S.W.2d 655, 659 & n.2 (Tex. 1999). Its primary concern is the refusal of
many courts to accord finality to custody decrees issued by other states,
resulting in frequent relitigation of custody judgments, often to the child's
detriment. Id. at 659. Other stated purposes of the UCCJEA
include (1) discouraging the use of the interstate system for continuing
controversies over child custody, (2) deterring the abduction of children, and
(3) facilitating the enforcement of custody decrees of other states. See
John J. Sampson et al., Texas Family Code Annotated § 152.101 cmt. (11th ed.
2001). The UCCJEA further recognizes that "time is extremely
important" in visitation and custody cases, and a "swift enforcement
mechanism is desirable for violations of both custody and visitation
provisions." Id. ch. 152, prefatory note.
Within the UCCJEA, section 152.302 gives this state the authority to
enforce an order for the return of a child made under the Hague Convention. Tex.
Fam. Code Ann. §152.302. This section recognizes the need for a speedy
enforcement remedy for an order to return a child and emphasizes the primary
focus of the Hague Convention, which is expedience in resolution of child
custody conflicts. See Sampson, Texas Family Code
Annotated § 152.302 cmt. The introduction of the Hague Convention states that
the "interests of children are of paramount importance in matters relating
to their custody," and the signatories want to establish procedures to
ensure their prompt return. See Convention on the Civil
Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670,
1988 WL 411501, at *2. Article two of the Hague Convention notes that all
territories should take all appropriate measures to secure the implementation of
its purpose and "shall use the most expeditious procedures available."
Id., art. 2, 1988 WL 411501, at *2. Article eleven states
that judicial authorities shall act expeditiously in proceedings for the return
of children. Id., art. 11, 1988 WL 411501, at *4.
Therefore, the provisions of the Hague Convention leave little doubt that their
overall purpose is to use the most expeditious proceedings in child custody
proceedings. Thus, when Texas adopted the UCCJEA, which included a section
concerning the Hague Convention, the legislative intent included this desire for
an expedient resolution. See Tex. Fam. Code Ann. §
152.302; see also Tex. Gov't Code Ann. § 311.023 (stating
that a court may consider the object sought to be attained of any particular
statutory construction); Citizens Bank v. First State Bank,
580 S.W.2d 344, 348 (Tex. 1979) (stating that if the language of a statute is
susceptible of two constructions, one of which will carry out such manifest
object and the other defeat it, it should receive the former construction).
Having considered the legislative intent of the UCCJEA and Hague
Convention, we will focus now on the actual language within the statute. As we
previously mentioned, section 152.314 states that "[a]n appeal may be
taken." Tex. Fam. Code Ann. § 152.314. The use of the word "may"
creates a discretionary authority or grants permission. Tex. Gov't Code Ann. §
311.016. Thus, it is within an appellant's discretion whether or not he brings
an appeal under this subchapter.
If the appellant chooses to bring an appeal, the statute mandates that
an appellant do so "in accordance with expedited appellate procedures in
other civil cases." Tex. Fam. Code Ann. § 152.314. Webster's dictionary
defines "expedite" as "to accelerate the process or progress
of." Webster's Third New International Dictionary 799 (1981). Thus, in this
section, expedited means accelerated.(4)
Furthermore, other civil cases that use "expedited" procedures are
considered accelerated appeals. See Tex. R. App. P.
28.1-.2 (discussing accelerated appeals in civil cases); see
also Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2003)
(listing those orders that may be appealed before a final judgment and are
accelerated).
This interpretation comports with the general rules for statutory
construction. See Raines, 930 S.W.2d at 913 (stating that
among other things, the court must be governed by the rules of common sense).
Furthermore, this interpretation would not render enforcement impossible, but
rather promotes the objective of the Hague Convention and the intent in which
the UCCJEA was enacted. Id. We therefore conclude that
appeals under section 152.314 are accelerated appeals and must comply with the
accelerated appeal timetables.(5)
Application of Accelerated Appeal
Timetables
The appellate rules require an appellant to file a notice of appeal in
an accelerated appeal within twenty days after the judgment or order is signed.
Tex. R. App. P. 26.1(b). Although appellant may file a motion for new trial, the
motion will not extend the twenty-day notice of appeal deadline. See
Tex. R. App. P. 28.1; see also Revier v. Spragins, 810
S.W.2d 298, 299 (Tex. App.--Fort Worth 1991, no writ) (holding motion for new
trial in accelerated appeal did not extend the appellate deadlines).
Here, the Texas district court signed the final order adopting the
Nevada court order on April 17, 2002. Although appellant filed a motion for new
trial on May 17, 2002, this did not extend his time for filing a notice of
appeal. Appellant had to file his notice of appeal within twenty days from the
signing of the April 17, 2002 order. He did not file his notice until June 11,
2002.
The times for filing a notice of appeal are jurisdictional in this
court, and absent a timely filed notice of appeal or an extension request, we
must dismiss the appeal. See Tex. R. App. P. 2, 25.1,
26.3; Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997)
(holding once extension period has passed, a party can no longer invoke an
appellate court's jurisdiction). Thus, we conclude that we do not have
jurisdiction over this appeal because Father's notice of appeal was untimely.
Conclusion
Having concluded that we have no jurisdiction over Father's appeal, we
dismiss his appeal. Tex. R. App. P. 42.3(a); 43.2(f).
 
                                                           TERRIE
LIVINGSTON
                                                           JUSTICE
PANEL A: LIVINGSTON, DAUPHINOT, and HOLMAN JJ.
DELIVERED: May 15, 2003

1. Mother argued that Father and his girlfriend abducted
the children when they came to Norway under the guise of celebrating a birthday.
She claimed he then brought the children back to Texas.
2. The trial court then awarded Mother another $6,697.90
plus interest in attorney's fees for opposing a mandamus, $2,100 plus interest
for opposing the motion for new trial, and up to $55,000 plus interest in
appellate fees.
3. Father argues throughout his brief that
Mother failed to follow the proper enforcement and registration procedures for
the Nevada order. When this court asked both parties to submit letters
concerning the jurisdictional question raised by section 152.314, Father then
argued that the section was inapplicable since the order was never properly
filed and, thus, was not an enforcement action at all. Father cannot have it
both ways. He cannot argue on one hand that Mother failed to comply with the
procedural requirements for enforcing the order under the UCCJEA and then also
argue that the section does not even apply.
4. Webster's defines accelerate as "to hasten the
ordinary progress." Webster's Third New
International Dictionary 10 (1981).
5. We recognize that section 109.002 states that an appeal
from a final order shall be as in civil cases generally. Tex. Fam. Code Ann. §
109.002 (Vernon 2002). However, when a provision of the UCCJEA conflicts with
another family code provision and the conflict is irreconcilable, the UCCJEA
provision takes precedence. Id. § 152.002; see
also In re McCormick, 87 S.W.3d 746, 750 (Tex. App.--Amarillo 2002, no
pet.).